## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| MICHAEL C. MAYO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. **1:21-cv-04653** |
| | ) | |
| LARRY GAVIN, KAREN JONES-HAYES, | ) | Hon. Judge John J. Tharp, Jr. |
| DAMITA DELITZ, BRENDON | ) | Mag. Judge M. David Weisman |
| LOMBARDI, DIRECTOR MILLER, | ) | |
| OFFICER BUCHANAN, THOMAS DART, | ) | |
| AND LIEUTENANT DOUGE, | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANT, BRENDAN LOMBARDI'S AMENDED ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFF'S THIRD AMENDED COMPLAINT

NOW COMES Defendant, BRENDAN LOMBARDI, by and through his attorneys Jason

E. DeVore and Troy S. Radunsky of the law firm DeVore Radunsky LLC, and for Defendant's

Answer and Affirmative Defenses to Counts VI and VII of Plaintiff's Third Amended Complaint,

states as follows:

## PRELIMINARY STATEMENT

1.      This case centers on Defendants' actions during and after an April 29, 2020 riot in

Division 8/3G where Mr. Mayo, a detainee awaiting trial in the Cook County Department of

Corrections (the "Cook County Jail" or the "Jail"), is housed.  Defendants intentionally ignored

the dangerous conditions giving rise to the riot, and failed to protect Mr. Mayo from rioting

inmates, who threw objects at him and sprayed him with mace; failed to treat Mr. Mayo for

injuries sustained during the riot; handcuffed him despite a medical order that prohibits

handcuffing Mr. Mayo, who is a disabled veteran and uses a cane to walk; ignored Mr. Mayo's

pleas to be transported by elevator and instead forced him to walk down several flights of stairs; left Mr. Mayo unattended for 15 minutes after he collapsed in the stairwell, sustaining significant injuries, as a result of having been forced to walk down several flights of stairs; left Mr. Mayo, who was wearing only his underwear, in a cold cell for over 12 hours, and failed to administer any of his critical medications during this period.

**ANSWER:    This defendant lacks knowledge and has insufficient information to admit or deny the allegations in paragraph 1.**

2.      After Mr. Mayo's collapse, and given his immobility and injuries, he was provided a wheelchair to facilitate his transfer to another division while the Jail's Emergency Response Team (ERT) regained order in Division 8/3G.  Three weeks later, on May 21, 2020, Sergeant Lombardi—purporting to act at the direction of Jail medical staff—confiscated the wheelchair because Mr. Mayo did not have a formal prescription to possess it.  In the course of confiscating the wheelchair, Sergeant Lombardi assaulted Mr. Mayo, resulting in significant injuries from which Mr. Mayo continues to suffer.  In an attempt to cover-up the assault, Sergeant Lombardi issued a citation to Mr. Mayo that contained falsehoods.

**ANSWER:    This defendant lacks knowledge and has insufficient information to admit or deny after Mayo's collapse and given his immobility and injuries he was provided a wheelchair to facilitate his transfer to another division while the Jails ERT regained order in Division 8/3G. This defendant admits that on May 21, 2020, the plaintiffs wheelchair was confiscated at the direction of jail medical staff because Mayo did not have a formal prescription to possess it. This defendant denies all other allegations in paragraph 2.**

2

3.      Mr. Mayo subsequently grieved the assault, after which Sergeant Lombardi—motivated by Mr. Mayo's protected activity—embarked on a persistent and egregious pattern of retaliatory harassment against Mr. Mayo.

**ANSWER**:    **This defendant admits Mr. Mayo filed a grievance and denies all other allegations in paragraph 3.**

## JURISDICTION AND VENUE

4.      This action is brought pursuant to 42 U.S.C. § 1983 for violations of Mr. Mayo's constitutional rights under the Fourteenth Amendment and constitutional Amendments incorporated therein as against the states.  This Court has jurisdiction over all claims pursuant to 28 U.S.C. §§ 1331 and 1343(a).  Venue is proper is this judicial district pursuant to 28 U.S.C. § 1391(b) because the events giving rise to Mr. Mayo's claims occurred in Cook County, Illinois.

**ANSWER:**    **This defendant admits the allegations in paragraph 4.**

## PARTIES

5.      Plaintiff Michael C. Mayo is, and was at all relevant times herein, a pretrial detainee at the Cook County Jail.

**ANSWER:  This defendant admits the allegations in paragraph 5.**

6.      Mr. Gavin was at all relevant times an Assistant Executive Director at the Cook County Jail, and is sued in his individual capacity.

**ANSWER**:    **This defendant lacks knowledge and has insufficient information to admit or deny the allegations in paragraph 6.**

7.      Ms. Jones-Hayes was at all relevant times a Superintendent at the Cook County Jail, and is sued in her individual capacity.

**ANSWER:     This defendant lacks knowledge and has insufficient information to admit or deny the allegations in paragraph 7.**


8.      Ms. Delitz was, at various points relevant to this complaint, a Sergeant and a Lieutenant at the Cook County Jail, and is sued in her individual capacity.

**ANSWER:     This defendant lacks knowledge and has insufficient information to admit or deny the allegations in paragraph 8.**

9.      Mr. Lombardi was at all relevant times a Sergeant at the Cook County Jail, and is sued in his individual capacity.

**ANSWER:     This defendant admits the allegations in paragraph 9.**

10.      Mr. Miller was at all relevant times an Executive Director at the Cook County Jail, and is sued in his individual capacity.

**ANSWER:     This defendant lacks knowledge and has insufficient information to admit or deny the allegations in paragraph 10.**

11.      Officer Buchanan and Lieutenant Douge are employees of the Cook County Jail who served, either in a full- or part-time capacity, on the Jail's ERT during the events alleged herein, and are sued in their individual capacities.

**ANSWER:     This defendant lacks knowledge and has insufficient information to admit or deny the allegations in paragraph 11.**

12.      Thomas Dart is the Cook County Sheriff, and is sued in his official capacity.

**ANSWER:     The defendant admits that Thomas Dart is the Cook County Sheriff and lacks knowledge and has insufficient information to admit or deny the allegations in paragraph 12.**

13.     All defendants acted within the scope of their employment at the Cook County Jail during the events described in this complaint, and therefore acted under color of law of the State of Illinois.

**ANSWER:     This defendant admits he acted within the scope of employment at the Cook County Jail. This defendant lacks knowledge and has insufficient information to admit or deny the remaining allegations in paragraph 13.**

## STATEMENT OF FACTS

14.     Throughout March and April of 2020, during the height of uncertainty related to the Covid-19 pandemic, conflicts between Jail inmates and Jail staff substantially proliferated due to the Jail's failure to implement basic health precautions recommended by state and federal health officials.  While inmates intently watched cable news programming announcing the latest recommendations and describing the unfolding global pandemic, Jail staff, upon information and belief, did not communicate with inmates regarding the Jail's plans (if any) to protect inmates from Covid-19.

**ANSWER:     This defendant denies the allegations in paragraph 14.**

15.     In a futile attempt to mollify growing unrest amongst Jail inmates, Jail staff began loosening restrictions on television and phone access, among other measures not intended to address the Covid-19 pandemic in the Cook County Jail.

**ANSWER:     This defendant lacks knowledge and has insufficient information to admit or deny the allegations in paragraph 15.**

16.     At the same time, Jail staff reduced or eliminated measures designed to ensure order in the Jail, and reduced other services leading to unsanitary conditions.  For example, upon

information and belief, correctional officers substantially reduced or altogether ceased periodic walk-throughs of various divisions, and failed to collect refuse which led to overflowing garbage bins.  See *https://southsideweekly.com/not-getting-no-treatment-cook-county-jail-covid/* (recounting interviews of Division 8 detainees conducted on April 6 and 7, 2020).

**ANSWER:**   **This defendant denies the allegations in paragraph 16.**

17.     Relying on Jail policies issued in response to the Covid-19 pandemic, correctional officers who had previously ensured order amongst inmates by standing guard inside the tier to which they were assigned began routinely opting—pursuant to a permissive, but not mandatory, policy—to stand guard outside of such tiers.

**ANSWER:**   **This defendant denies the allegations in paragraph 17.**

18.     Amidst this environment, in March and April of 2020, Jail staff increasingly lost control of various subdivisions of the Jail, in turn leading to a marked increase in the deployment of the Jail's ERT to restore order.

**ANSWER:**   **This defendant denies jail staff increasing lost control of various subdivision of the Jail and has insufficient information to admit or deny the remaining allegations in paragraph 18.**

19.     Division 8/3G, where Mr. Mayo is housed—and was at all times relevant to this complaint—is part of a Residential Treatment Unit (RTU) designed for the provision of medical care to detainees with injuries and other serious medical conditions that could not be adequately treated in other divisions.

**ANSWER:**   **This defendant admits the allegations in paragraph 19.**

20.     Because of their medical conditions, detainees in Division 8/3G were especially vulnerable to serious disease or death from exposure to SARS-CoV-2.  Detainees in Division

6

8/3G, by virtue of their medical conditions, were also especially vulnerable to physical mistreatment, and faced heightened risk from prison fights and riots, or the use of force by correctional personnel.

**ANSWER:    This defendant lacks knowledge and has insufficient information to admit or deny the allegations in paragraph 20.**

21.     Upon information and belief, in March and April 2020, multiple detainees in Division 8 died from, or became seriously ill with, Covid-19.

**ANSWER:    This defendant lacks knowledge and has insufficient information to admit or deny the allegations in paragraph 21.**

22.     Upon information and belief, in March and April of 2020, Jail staff reduced or eliminated healthcare measures previously in place to care for detainees housed in Division 8. *See https://southsideweekly.com/not-getting-no-treatment-cook-county-jail-covid/* (Division 8 detainee undergoing chemotherapy relaying: "I don't have any medicine[,] I'm not seeing the doctors[,] [t]he nurse is not coming").

**ANSWER:    This defendant lacks knowledge and has insufficient information to admit or deny the allegations in paragraph 21.**

23.     Upon information and belief, in March and April of 2020, Jail staff substantially reduced or eliminated measures previously in place in Division 8 to ensure safety of detainees and maintain order of the Division.  *See id.* ("You know, the officers don't even come on this deck where we at. We pretty much monitor and watching ourselves. The officers go around with gloves and masks. We have nothing.").

**ANSWER:    This defendant denies the allegations in paragraph 23.**

24.     Division 8/3G is a dormitory-style unit—the 39 detainees housed therein do not have dedicated cells, and instead reside on bunk beds in a single room.  Division 8/3G detainees thus cannot retreat to a cell in order to protect themselves from aggressive or violent conduct by other detainees.

**ANSWER:     This defendant lacks knowledge and has insufficient information to admit or deny the allegations in paragraph 24.**

25.     At some point in March or April of 2020, Division 8/3G was transformed into a "covid-designated" division.  As a result of such designation, inmates from other divisions who had tested positive for Covid-19 or had been exposed to an inmate who had tested positive for Covid-19 were transferred from their assigned divisions to Division 8/3G while their illnesses subsided or their period of "quarantine" ran its course.

**ANSWER:     This defendant lacks knowledge and has insufficient information to admit or deny the allegations in paragraph 24.**

26.     By virtue of Division 8/3G's designation as a "covid-designated" division, multiple inmates whose violent or otherwise disruptive behavior at the Jail rendered them flatly ineligible to be housed in a dormitory-style tier (and instead required them to be housed in cells) were being housed in Division 8/3G alongside inmates (including Mr. Mayo) whose substantial medical needs, and non-violent and compliant behavior at the Jail, entitled them to be housed in Division 8/3G.

**ANSWER:     This defendant lacks knowledge and has insufficient information to admit or deny the allegations in paragraph 26.**

27.     At some point in March or April of 2020, Defendant Miller promulgated a policy under which no inmate in a "covid-designated" division could be transferred out of such division

without the approval of an executive director, even if an inmate was engaging in violence or other misconduct that poses a risk to other detainees.

**ANSWER:    This defendant lacks knowledge and has insufficient information to admit or deny the allegations in paragraph 27.**

28.    Upon information and belief, Defendant Dart either directed Defendant Miller to adopt such policy, or Defendant Miller adopted the policy pursuant to final policymaking authority that had been delegated to him by Defendant Dart.

**ANSWER:    This defendant lacks knowledge and has insufficient information to admit or deny the allegations in paragraph 28.**

29.    In the alternative, and upon information and belief, Defendant Dart ratified Defendant Miller's issuance of such policy on or before April 28, 2020.

**ANSWER:    This defendant lacks knowledge and has insufficient information to admit or deny the allegations in paragraph 29.**

**Jail Staff Ignores Deteriorating Conditions in Division 8/3G and Fails to Protect Mr. Mayo from Rioting Detainees**

30.    On the evening of April 28, 2020, a Division 8/3G detainee created a liquid intoxicant (referred to by detainees and Jail staff as "hooch") from prescription medications. Several detainees ingested the hooch, became intoxicated, and harassed the dormitory throughout the night, including by stealing personal possessions of other detainees.

**ANSWER:    This defendant lacks knowledge and has insufficient information to admit or deny the allegations in paragraph 30.**

31.    Division 8/3G correctional officers were aware of this activity, but took no measures to restore order in the Division aside from confiscating some, but not all, of the hooch.

9

**ANSWER:     This defendant lacks knowledge and has insufficient information to admit or deny the allegations in paragraph 31.**

32.     Jail staff assigned to Division 8/3G during the 11:00pm to 7:00am shift (from April 28, 2020 to April 29, 2020) would have transferred the detainees engaging in misconduct to another division better-equipped to constrain their disruptive behavior, but the policy promulgated by Defendant Miller required executive director approval before doing so.  Jail staff did not rouse any executive director to secure the required approval, so the problematic detainees remained in Division 8/3G.

**ANSWER:     This defendant lacks knowledge and has insufficient information to admit or deny the allegations in paragraph 32.**

33.     Many or all of the detainees participating in the above conduct were in Division 8/3G due to covid protocols, and absent such protocols, these detainees would never have been housed in a dormitory-style division due to their violent nature and behavior at the Jail, and would instead have been in a division with cells.

**ANSWER:     This defendant lacks knowledge and has insufficient information to admit or deny the allegations in paragraph 33.**

34.     At or around 7:30 am the following morning (April 29, 2020), the intoxicated and disorderly detainees asked Jail staff to turn on the television and enable the Division's telephone bank.  Jail staff denied the request, and, upon information and belief, the telephones and televisions were never activated.

**ANSWER:     This defendant lacks knowledge and has insufficient information to admit or deny the allegations in paragraph 34**

35. Because Defendants withdrew the primary means by which Jail staff were ensuring safety and order in Division 8/3G (television and phones), the intoxicated inmates began rioting.

**ANSWER: This defendant lacks knowledge and has insufficient information to admit or deny the allegations in paragraph 35.**

36. Multiple fist fights ensued, and detainees acquired various objects, including correctional staff phones/computers and mop buckets, and began using them as weapons. One detainee acquired a can of mace and sprayed it throughout the Division.

**ANSWER: This defendant lacks knowledge and has insufficient information to admit or deny the allegations in paragraph 36.**

37. Mr. Mayo did not participate in any of this conduct, and attempted to stay out of the fray by remaining on his bed.

**ANSWER: This defendant lacks knowledge and has insufficient information to admit or deny the allegations in paragraph 37.**

38. Because of the dormitory-style layout of Division 8/3G, Mr. Mayo was unable to protect himself and was hit with multiple implements and sprayed with mace, sustaining injuries as a result.

**ANSWER: This defendant lacks knowledge and has insufficient information to admit or deny the allegations in paragraph 38.**

39. Mr. Mayo and other detainees pleaded for Jail staff to intervene and protect the non-rioting detainees, which pleas were ignored.

**ANSWER: This defendant lacks knowledge and has insufficient information to admit or deny the allegations in paragraph 39.**

40. The riot continued for more than an hour while at least forty Jail employees watched the mayhem from behind protective glass.

**ANSWER: This defendant lacks knowledge and has insufficient information to admit or deny the allegations in paragraph 40.**

41. Defendants Gavin, Jones-Hayes, and/or Delitz directed Jail staff to avoid entering Division 8/3G to restore order.

**ANSWER: This defendant lacks knowledge and has insufficient information to admit or deny the allegations in paragraph 41.**

42. After more than an hour of rioting, upon information and belief, the ERT entered the Division at the direction of Defendant Gavin, who told the ERT that all detainees in Division 8/3G had become hostile.

**ANSWER: This defendant lacks knowledge and has insufficient information to admit or deny the allegations in paragraph 42.**

43. The ERT, armed with weapons and accompanied by dogs, entered the Division and forcibly restrained all detainees, whether or not they participated in the riot.

ANSWER: This defendant lacks knowledge and has insufficient information to admit or deny the allegations in paragraph 43.

**ANSWER: This defendant lacks knowledge and has insufficient information to admit or deny the allegations in paragraph 43.**

44. Mr. Mayo was forcibly removed from his bed, clothed only in his underwear, and taken into the custody of Officer Buchanan and/or Lieutenant Douge.

**ANSWER: This defendant lacks knowledge and has insufficient information to admit or deny the allegations in paragraph 44.**

12

45.     When Officer Buchanan and/or Lieutenant Douge began escorting Mr. Mayo out of the division, Mr. Mayo—a disabled veteran who is prescribed a cane that prohibits him from being cuffed while walking—informed them that he could not walk with his cane while cuffed. Officer Buchanan and/or Lieutenant Douge ignored Mr. Mayo, and forced him to walk while cuffed.

**ANSWER:     This defendant lacks knowledge and has insufficient information to admit or deny the allegations in paragraph 45.**

46.     When Mr. Mayo and Officer Buchanan and/or Lieutenant Douge approached a flight of stairs, Mr. Mayo requested that he be transported by elevator because his medical condition made it impossible to navigate stairs with a cane, especially while cuffed.

**ANSWER:     This defendant lacks knowledge and has insufficient information to admit or deny the allegations in paragraph 46.**

47.     During this same period, members of the ERT transported numerous other detainees who had mobility issues by elevator.

**ANSWER:     This defendant lacks knowledge and has insufficient information to admit or deny the allegations in paragraph 47.**

48.     Officer Buchanan and/or Lieutenant Douge ignored Mr. Mayo's plea and forced him to walk down several flights of stairs.

**ANSWER:     This defendant lacks knowledge and has insufficient information to admit or deny the allegations in paragraph 48.**

49.     While walking down the stairs, Mr. Mayo collapsed, sustaining serious back injuries.

**ANSWER:** **This defendant lacks knowledge and has insufficient information to admit or deny the allegations in paragraph 49.**

50. After his collapse, Mr. Mayo was left cuffed on the floor of the stairwell, in his underwear, for fifteen minutes.

**ANSWER:** **This defendant lacks knowledge and has insufficient information to admit or deny the allegations in paragraph 50.**

51. Mr. Mayo was then carried up a flight of stairs, placed in a wheelchair, and transported to Division 10.

**ANSWER:** **This defendant lacks knowledge and has insufficient information to admit or deny the allegations in paragraph 51.**

52. Defendants Gavin and Miller directed the ERT to transfer all Division 8/3G inmates to Division 10.

**ANSWER:** **This defendant lacks knowledge and has insufficient information to admit or deny the allegations in paragraph 52.**

53. Mr. Mayo was detained in a small cell in Division 10, still clothed only in his underwear, for 12 hours.

**ANSWER:** **This defendant lacks knowledge and has insufficient information to admit or deny the allegations in paragraph 53.**

54. Division 10 is not a medical division, and is thus not equipped to treat detainees with serious medical conditions like Mr. Mayo and all other Division 8/3G detainees.

**ANSWER:** **This defendant lacks knowledge and has insufficient information to admit or deny the allegations in paragraph 54.**

14

55.     During this time, Mr. Mayo was not provided several critical medications he should have been administered, including: Iron supplements (to treat Mr. Mayo's anemia), Glipizide (to treat Mr. Mayo's diabetes), Clonidine (to treat Mr. Mayo's high blood pressure), Hydralazine (to treat Mr. Mayo's high blood pressure), Sevelamer (to treat Mr. Mayo's kidney failure), and Lasix (to treat Mr. Mayo's kidney failure).

**ANSWER:     This defendant lacks knowledge and has insufficient information to admit or deny the allegations in paragraph 55.**

56.     In the afternoon, Division 8/3G's charge nurse (Nurse Anderson) arrived at the Jail and expressed alarm that detainees with serious medical conditions were being held in small cells in Division 10 where their care could not be adequately managed.

**ANSWER:     This defendant lacks knowledge and has insufficient information to admit or deny the allegations in paragraph 56.**

57.     On April 30, 2020, Mr. Mayo filed a grievance relating to (1) the Jail's failure to protect him from rioting inmates, (2) the ERT's failure to attend to his medical needs as a disabled person who is prescribed a cane, leading to his collapse in the stairwell, and (3) the Jail's failure to provide him with his critical medications while he was detained in Division 10.

**ANSWER:     This defendant lacks knowledge and has insufficient information to admit or deny the allegations in paragraph 57.**

58.     Jail staff denied Mr. Mayo's grievance, and on May 12, 2020, Mr. Mayo requested an appeal pursuant to administrative procedures made available by the Jail.

**ANSWER:     This defendant lacks knowledge and has insufficient information to admit or deny the allegations in paragraph 58.**

59.     On May 14, 2020, Jail staff denied Mr. Mayo's request, stating that the Jail's "original response stands."

**ANSWER:     This defendant lacks knowledge and has insufficient information to admit or deny the allegations in paragraph 59.**

**Defendant Lombardi Assaults Mr. Mayo**

60.     Because of injuries sustained when he collapsed in the stairwell, Mr. Mayo was given a wheelchair by medical staff.

**ANSWER:     This defendant lacks knowledge and has insufficient information to admit or deny the allegations in paragraph 60.**

61.     On May 21, 2020, roughly three weeks following the riot, Defendant Lombardi, purporting to act at the direction of Dr. Haman, arrived at Mr. Mayo's living space to confiscate the wheelchair he had possessed since the riot.

**ANSWER:     This defendant admits on May 21, 2020, Mr. Mayo's wheelchair was confiscated at the direction of Dr. Haman. This defendant lacks knowledge and has insufficient information to admit or deny the remaining allegations in paragraph 61.**

62.     Mr. Mayo explained he required the wheelchair due to the injuries he suffered when he collapsed in the stairwell.

**ANSWER:     This defendant lacks knowledge and has insufficient information to admit or deny the allegations in paragraph 62.**

63.     Defendant Lombardi then transported Mr. Mayo in the wheelchair to the 3 West bullpen.

**ANSWER:     This defendant admits the allegations in paragraph 63.**

16

64.     In the 3 West bullpen, Sergeant Lombardi forcibly removed Mr. Mayo from the wheelchair, violently pulling Mr. Mayo out of the chair by his arm.

**ANSWER:     This defendant admits he removed Mr. Mayo from the wheelchair. This defendant denies all other remaining allegations in paragraph 64.**

65.     Sergeant Lombardi then assaulted Mr. Mayo by slamming his head on the concrete floor in the course of piling his body onto Mr. Mayo's back, neck, and head, causing Mr. Mayo to briefly lose consciousness, and, upon information and belief, suffer a concussion.

**ANSWER:     This defendant denies the allegations in paragraph 65.**

66.     Mr. Mayo suffered substantial pain during and after this event, and continues to experience symptoms related to his head injury, including: dizziness, headaches, impaired memory/recall, and blurred vision.

**ANSWER:     This defendant denies the allegations in paragraph 66.**

67.     Defendant Lombardi then restrained Mr. Mayo against the wall in the bullpen.

**ANSWER:     This defendant admits the allegations in paragraph 67.**

68.     Mr. Mayo was restrained in the bullpen for roughly an hour until Sergeant Lupino arrived and directed that Mr. Mayo be uncuffed.

**ANSWER:     This defendant lacks knowledge and has insufficient information to admit or deny the allegations in paragraph 68.**

69.     Sergeant Lupino knew Mr. Mayo to be a rule-abiding, peaceful detainee, and inquired about the circumstances leading to Mr. Mayo being restrained.

**ANSWER:     This defendant lacks knowledge and has insufficient information to admit or deny the allegations in paragraph 69.**

17

70.     Mr. Mayo recounted the assault, and Sergeant Lupino asked Mr. Mayo whether he would provide a video narrative regarding the events.  Mr. Mayo provided such narrative.

**ANSWER:   This defendant lacks knowledge and has insufficient information to admit or deny the allegations in paragraph 70.**

71.     While Mr. Mayo was restrained in the 3 West bullpen, Sergeant Lombardi returned to Mr. Mayo's living space and, in full view of other detainees, proceeded to steal, scatter, and destroy Mr. Mayo's belongings.

**ANSWER:     This defendant denies the allegations in paragraph 71**

72.     Specifically, Sergeant Lombardi stole items Mr. Mayo had purchased from the Jail's commissary, ripped up Mr. Mayo's personal and legal documents, and threw books and other personal belongings of Mr. Mayo's onto the floor.

**ANSWER:     This defendant denies the allegations in paragraph 72**

73.     Later that same day, Mr. Mayo asked Sergeant Lombardi why he had engaged in this conduct.  Sergeant Lombardi smiled and told Mr. Mayo "I was looking for your cane."

**ANSWER:     This defendant denies the allegations in paragraph 73.**

74.     Upon information and belief, Sergeant Lombardi performed these actions in an attempt to intimidate Mr. Mayo and prevent him from pursuing discipline against Sergeant Lombardi for the assault.

**ANSWER:     This defendant denies the allegations in paragraph 74.**

75.     Sergeant Lombardi subsequently issued Mr. Mayo a citation containing four charges emanating from the assault: Possession of Level 2 Contraband, False Reporting or False Statement, Disobeying or Resisting Orders, and Disorderly Conduct.

**ANSWER:     This defendant denies the allegations in paragraph 75.**

18

76.     Sergeant Lombardi's supporting factual narrative contained patent falsehoods regarding Mr. Mayo's verbal and non-verbal responses to Sergeant Lombardi's attempt to confiscate the wheelchair given to Mr. Mayo by Jail medical staff.

**ANSWER:     This defendant denies the allegations in paragraph 76.**

77.     Upon information and belief, Sergeant Lombardi issued the false citation to Mr. Mayo to cover-up the assault.

**ANSWER:     This defendant denies the allegations in paragraph 77.**

78.     When inmates in Division 8/3G receive citations, they are provided a "hearing" during which they enter a plea.  In practice and custom, citation hearings are held at the entrance to the detainee's tier.

**ANSWER:     This defendant denies the allegations in paragraph 78.**

79.     When the Jail held a hearing for the citation issued to Mr. Mayo by Sergeant Lombardi, it departed from this practice and held his hearing at an unknown location outside of Mr. Mayo's tier.

**ANSWER:     This defendant denies the allegations in paragraph 79.**

80.     Because of significant pain from injuries sustained during the April 29, 2020 riot and the May 21, 2020 assault, Mr. Mayo was unable to leave his living space to attend the hearing, and was thus found guilty of all charges in the citation for failure to attend the hearing.

**ANSWER:     This defendant lacks knowledge and has insufficient information to admit or deny the allegations in paragraph 80.**

81.     Upon information and belief, Sergeant Lombardi caused this deviation in citation hearing practice because he knew Mr. Mayo's injuries would preclude him from traveling to the

hearing location and providing his version of the events, thereby furthering Sergeant Lombardi's attempt to cover-up his assault of Mr. Mayo.

**ANSWER:     This defendant denies the allegations in paragraph 81**

82.     On May 21, 2020, the same day of the assault, Mr. Mayo filed two grievances: one medical-related grievance and one regarding Sergeant Lombardi's assault.

**ANSWER:     This defendant lacks knowledge and has insufficient information to admit or deny the allegations in paragraph 82.**

83.     Mr. Mayo placed both grievances in a locked box designated for detainee grievances, and he observed a correctional officer collect the grievances and hand them to Ms. Scales, a social worker employed by the Jail who was tasked with resolving grievances.

**ANSWER:     This defendant lacks knowledge and has insufficient information to admit or deny the allegations in paragraph 83.**

84.     On or about June 6, 2020, Ms. Scales provided Mr. Mayo with the inmate carbon copy of his medical-related grievance.

**ANSWER:     This defendant lacks knowledge and has insufficient information to admit or deny the allegations in paragraph 84.**

85.     When Ms. Scales provided the inmate copy to Mr. Mayo, he asked Ms. Scales about the status of the assault grievance.  Ms. Scales responded that she was "still working on it."

**ANSWER:     This defendant lacks knowledge and has insufficient information to admit or deny the allegations in paragraph 85.**

86.     Almost a month later, on July 4, 2020, having never received the inmate carbon copy of his grievance related to Sergeant Lombardi's assault, Mr. Mayo filed another grievance reiterating the substance of the original grievance he filed on May 21, 2020.

**ANSWER:     This defendant lacks knowledge and has insufficient information to admit or deny the allegations in paragraph 86.**

87.     Mr. Mayo's second grievance was denied because it was filed more than 15 days after the assault.

**ANSWER:     This defendant lacks knowledge and has insufficient information to admit or deny the allegations in paragraph 87.**

88.     Because the Jail's employees, either intentionally or negligently, lost Mr. Mayo's grievance and then denied his replacement grievance as untimely, on July 30, 2020, Mr. Mayo filed a complaint regarding his assault at the hands of Sergeant Lombardi with the Cook County Office of Professional Review (OPR).

**ANSWER:     This defendant lacks knowledge and has insufficient information to admit or deny the allegations in paragraph 88.**

89.     On October 15, 2020, the OPR sent correspondence to Mr. Mayo relaying that it had "completed its review" of Mr. Mayo's complaint, but that "[d]ue to the confidentiality issues," it was "not at liberty to provide the findings of any investigation."

**ANSWER:     This defendant lacks knowledge and has insufficient information to admit or deny the allegations in paragraph 89.**

90.     Upon information and belief, Sergeant Lombardi was aware of Mr. Mayo's grievance and OPR complaint related to the assault, and would have been interviewed in connection with the OPR investigation.

**ANSWER:     This defendant denies the allegations in paragraph 90.**

91.     On September 22 and 24, 2020—after Mr. Mayo filed two grievances and one OPR complaint regarding Sergeant Lombardi's assault but before the OPR concluded its

investigation—Sergeant Lombardi conducted "shakedowns" (searches for contraband) in Division 8/3G.

**ANSWER:     This defendant lacks knowledge and has insufficient information to admit or deny the allegations in paragraph 91.**

92.     During these shakedowns, Sergeant Lombardi specifically targeted Mr. Mayo and searched his living space.

**ANSWER:     This defendant denies the allegations in paragraph 92.**

93.     In the months preceding these shakedowns and continuing to present day, shakedowns were exceedingly rare in Division 8/3G, occurring roughly monthly and typically only in response to a discernable issue (e.g., a fight in the Division).

**ANSWER:     This defendant lacks knowledge and has insufficient information to admit or deny the allegations in paragraph 93.**

94.     On January 29, 2021, Sergeant Lombardi again singled Mr. Mayo out during a shakedown, and confiscated lidocaine patches for which Mr. Mayo had a prescription (to treat pain from injuries sustained when he collapsed on the stairs during the April 29, 2020 riot, as well as pain from injuries sustained at the hands of Sergeant Lombardi).

**ANSWER:     This defendant admits he confiscated lidocaine patches. Defendant denies the remaining allegations in paragraph 94.**

95.     After confiscating the lidocaine patches that Mr. Mayo possessed pursuant to prescription, Sergeant Lombardi issued a citation to Mr. Mayo containing two charges for the lidocaine patches: Misuse of Medication and Possession of Level 2 Contraband.

**ANSWER:     This defendant lacks knowledge and has insufficient information to admit or deny the allegations in paragraph 95.**

96.     Aside from two citations issued by Sergeant Lombardi (one related to the assault and one for the lidocaine patches), Mr. Mayo has never received a citation in his more than three years of detention at the Jail.

**ANSWER:     This defendant lacks knowledge and has insufficient information to admit or deny the allegations in paragraph 96.**

97.     In April 2021, Sergeant Lombardi entered Division 8/3G in response to an inmate altercation not involving Mr. Mayo, who was laying on his bed.  When Sergeant Lombardi entered the deck he pointed at Mr. Mayo and said "you probably started the fight."

**ANSWER:     This defendant lacks knowledge and has insufficient information to admit or deny whether he responded to an altercation not involving Mr. Mayo in April 2021. This defendant denies all remaining allegations in paragraph 97.**

98.     On May 5, 2021, Sergeant Lombardi delivered mail to Divison 8/3G.  Mr. Mayo received legal mail that day, and the Jail's practice is to permit detainees to open their own legal mail while the Sergeant looks on to ensure it does not contain contraband.  Deviating from this practice, Sergeant Lombardi opened Mr. Mayo's legal mail, looked inside, and said "no drugs this time."

**ANSWER:     This defendant lacks knowledge and has insufficient information to admit or deny weather he delivered mail on May 5, 2021, to Mr. Mayo. This defendant denies all remaining allegations in paragraph 98.**

99.     On May 7, 2021, Jail staff issued new property bags to all 39 detainees in Division 8/3G.

**ANSWER:     This defendant lacks knowledge and has insufficient information to admit or deny the allegations in paragraph 99.**

100.     On May 8, 2021, Sergeant Lombardi entered Division 8/3G, walked past multiple living spaces with the new property bags in plain view, and proceeded to search under Mr. Mayo's bed, where he found Mr. Mayo's newly-issued property bag.  Sergeant Lombardi then confiscated the newly-issued property bag.

**ANSWER:     This defendant lacks knowledge and has insufficient information to admit or deny the allegations in paragraph 100.**

101.     Mr. Mayo then asked Sergeant Lombardi why he was continuing to single him out for harassment.  Sergeant Lombardi replied "because I can."

**ANSWER:     This defendant lacks knowledge and has insufficient information to admit or deny if Mr. Mayo asked why he was continuing to single him out for harassment.  This defendant denies the allegations in paragraph 101.**

102.     After this exchange, Sergeant Lombardi confiscated the newly-issued property bags from two other inmates, informing them that they "can thank Mayo" for the confiscation of their property bags.

**ANSWER:     This defendant denies the allegations in paragraph 102.**

103.     Sergeant Lombardi did not confiscate the newly-issued property bags of the remaining 36 detainees in Division 8/3G.

**ANSWER:     This defendant lacks knowledge and has insufficient information to admit or deny the allegations in paragraph 103.**

104.     Upon information and belief, Sergeant Lombardi confiscated the property bags of the other two detainees in a transparent effort to obscure his retaliation against Mr. Mayo after Mr. Mayo publicly accused Sergeant Lombardi of singling him out for harassment.

**ANSWER:     This defendant denies the allegations in paragraph 104.**

24

105.     On February 23, 2022—less than two weeks after Mr. Mayo filed an Amended Complaint asserting claims against Sergeant Lombardi—Mr. Mayo was told by a correctional officer that he had received legal mail, and that he could retrieve it in the hallway outside of the tier.

**ANSWER:     This defendant lacks knowledge and has insufficient information to admit or deny the allegations in paragraph 105.**

106.     The Jail's practice is to deliver legal mail to inmates inside the tier.

**ANSWER:     The defendant admits the allegations in paragraph 106.**

107.     Mr. Mayo exited the tier to see Sergeant Lombardi holding his legal mail at the end of the hallway.

**ANSWER:     This defendant lacks knowledge and has insufficient information to admit or deny the allegations in paragraph 107.**

108.     There was no other Jail personnel present in the hallway.

**ANSWER:     This defendant lacks knowledge and has insufficient information to admit or deny the allegations in paragraph 108.**

109.     Once Mr. Mayo traveled down the hallway, Sergeant Lombardi opened the mail, flipped through the contents, and then handed Mr. Mayo the mail.

**ANSWER:     This defendant lacks knowledge and has insufficient information to admit or deny the allegations in paragraph 109.**

110.     Mr. Mayo's legal mail was prominently labeled as such, and the first page of the mail was a cover letter from Mr. Mayo's counsel in this action bearing prominent designations of privilege and confidentiality.  The remainder of the mail consisted of as-filed versions of Mr. Mayo's Amended Complaints, which center largely around Mr. Lombardi's conduct.

**ANSWER:** **This defendant lacks knowledge and has insufficient information to admit or deny the allegations in paragraph 110.**

111. Mr. Mayo and Sergeant Lombardi did not exchange conversation, but Sergeant Lombardi's demeanor was intentionally intimidating.

**ANSWER:** **This defendant lacks knowledge and has insufficient information to admit or deny the allegations in paragraph 111.**

112. Sergeant Lombardi then followed Mr. Mayo back inside the tier where Sergeant Lombardi delivered legal mail to another inmate, consistent with the Jail's ordinary practice.

**ANSWER:** **This defendant lacks knowledge and has insufficient information to admit or deny the allegations in paragraph 112.**

113. As a result of Sergeant Lombardi's persistent, retaliatory harassment of Mr. Mayo, other detainees in Division 8/3G have taken collective efforts to protect Mr. Mayo from Sergeant Lombardi when he enters the Division.

**ANSWER:** **This defendant denies the allegations in paragraph 113.**

114. Sergeant Lomardi's persistent, retaliatory harassment of Mr. Mayo has caused Mr. Mayo to experience symptoms associated with post-traumatic stress disorder (PTSD), and he has received mental health treatment for the same.

**ANSWER:** **This defendant denies the allegations in paragraph 114.**

## COUNT I
**(Section 1983 Claim Against Defendants Jones-Hayes, Gavin, and Delitz for Failure to Protect)**

**This defendant makes no answer to Count I as it is not directed to this defendant.**

## COUNT II
**(Section 1983 Claim Against Defendant Dart, in his official capacity, for Failure to Protect)**

**This defendant makes no answer to Count II as it is not directed to this defendant.**

## COUNT III
**(Section 1983 Claim Against Defendant Miller for Failure to Protect, in the Alternative to Count II)**

**This defendant makes no answer to Count III as it is not directed to this defendant.**

## COUNT IV
**(Section 1983 Claim Against Defendants Buchanan and Lieutenant Douge for Failure to Attend to Mr. Mayo's Serious Medical Needs)**

**This defendant makes no answer to Count IV as it is not directed to this defendant.**

## COUNT V
**(Section 1983 Claim Against Defendants Gavin and Miller for Failure to Attend to Mr. Mayo's Serious Medical Needs)**

**This defendant makes no answer to Count V as it is not directed to this defendant.**

## COUNT VI
**(Section 1983 claim against Defendant Lombardi for Excessive Force)**

150.    Mr. Mayo repeats and realleges the preceding paragraphs as if fully set forth in this count.

**ANSWER: The defendant adopts and incorporates his answers to paragraphs 1-149 as his answer to paragraph 150.**

151.    Defendant Lombardi purposely used force against Mr. Mayo by violently removing him from his wheelchair, slamming his head on the concrete floor, and piling his body on to Mr. Mayo's prostrate body.

**ANSWER:    The defendant denies the allegations in paragraph 151.**

152.    Defendant Lombardi's use of force was objectively unreasonable.

**ANSWER:    The defendant denies the allegations in paragraph 152.**

153.    As a result of defendant Lombardi's unconstitutional conduct, Mr. Mayo suffered significant physical, mental and emotional injuries.

**ANSWER:    The defendant denies the allegations in paragraph 153.**

27

WHEREFORE, Defendant, BRENDAN LOMBARDI respectfully requests that this Court enter judgment in his favor and against Plaintiff, MICHAEL MAYO, along with any further relief as this Court deems just and proper.

<u>COUNT VII</u>
**Section 1983 claim against Defendant Lombardi for First Amendment Retaliation**

154.    Mr. Mayo repeats and realleges the preceding paragraphs as if fully set forth in this count.

**ANSWER: The defendant adopts and incorporates his answer to paragraphs 1-153 as his answer to paragraph 154.**

155.    By availing himself of grievance procedures and OPR complaints regarding defendant Lombardi, Mr. Mayo engaged in activity protected by the First Amendment (incorporated against the states through the 14th amendment).

**ANSWER:    The defendant denies the allegations in paragraph 155.**

156.    Subsequent to Mr. Mayo's protected activity, defendant Lombardi intentionally engaged in a persistent and egregious pattern of harassment.

**ANSWER:    The defendant denies the allegations in paragraph 156.**

157.    Defendant Lombardi's conduct would be likely to deter a person of ordinary firmness and Mr. Mayo's position from continuing to engage in protected activity.

**ANSWER:    The defendant has insufficient information to form a belief as to the truth or falsity of the allegation in paragraph 157.**

158.    Defendant Lombardi's conduct was motivated by Mr. Mayo's protected activity.

**ANSWER:    The defendant denies the allegations in paragraph 158.**

## **AFFIRMATIVE DEFENSES**

NOW COMES Defendant BRENDAN LOMBARDI, by and through his attorneys Jason E. DeVore and Troy S. Radunsky of the law firm DeVore Radunsky LLC, setting forth the following affirmative defenses.

1.      Each Defendant Correctional Officer's conduct was at all times objectively reasonable and did not violate any of Plaintiff's clearly established Constitutional Rights. Accordingly, Defendant is entitled to the defense of qualified immunity.

2.      To the extent that Plaintiff seeks punitive damages in this action, local governments are immune from punitive damages liability under § 1983. *See City of Newport v. Fact Concerts*, 453 U.S. 247 (1981). Therefore, to the extent Defendants are named in their official capacities, Defendants are immune from having to pay punitive damages to Plaintiff.

3.      To the extent Plaintiff is making any claims under Illinois law, Defendants are immune from Plaintiff's claims under 745 ILCS 10/2-204 of the Illinois Tort Immunity Act which provides as follows: "Except as otherwise provided by statute, a public employee, as such and acting within the scope of his employment, is not liable for any injury caused by the act or omission of another person."

4.      To the extent it is revealed that Plaintiff failed to take reasonable measures to mitigate his alleged injuries and damages, those facts shall be presented to preclude recovery for Plaintiff.

5.      Plaintiff did not properly exhaust his administrative remedies as required by the Prison Litigation Reform Act ("PLRA"). The PLRA provides that "no action shall be brought with respect to prison conditions under section 1983 . . . until such administrative remedies as are

available are exhausted." 42 U.S.C. § 1997e(a). The Plaintiff was at all relevant times and the date

of filing, a prisoner, and subject to the PLRA.

6.      Defendants reserve their rights to assert other affirmative defenses as they become

known through further discovery or otherwise in this action.

WHEREFORE, Defendant, BRENDAN LOMBARDI, respectfully requests that this

Court enter judgment in his favor and against Plaintiff, MICHAEL MAYO, along with any

further relief as this Court deems just and proper.

Respectfully Submitted


By:      */s/ Jason E. DeVore*_____
         Jason E. DeVore, One of the Attorneys for
         the Defendants

**DeVore Radunsky LLC**
Jason E. DeVore (ARDC # 6242782)
Troy S. Radunsky (ARDC # 6269281)
230 W. Monroe, Suite 230
Chicago, IL 60606
(312) 300-4479
jdevore@devoreradunsky.com
tradunsky@devoreradunsky.com

30

## CERTIFICATE OF SERVICE

The undersigned, an attorney, hereby certifies that **Defendant Lombardi's Amended Answer and Affirmative Defenses to Plaintiff's Third Amended Complaint** was filed on October 13, 2022, with the Northern District of Illinois ECF system, serving a copy on all parties.

*/s/ Jason E. DeVore*
Jason E. DeVore

**PLAINTIFF'S COUNSEL**
Kirkland & Ellis
300 N. LaSalle
Chicago, IL 60654
Ms. Jennifer M. Joslin (Jennifer.Joslin@kirkland.com)
Mr. David J Zott (dzott@kirkland.com)
Mr. Vivek Biswas (Vivek.biswas@kirkland.com)
Mr. John P. Hannon (John.hannon@kirklnad.com)
**T** +1 801 877 8144 **M** +1 801 637 8401
**F** +1 801 877 8101