IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MICHAEL C. MAYO, | ) | |
| | ) | |
| Plaintiff, | ) | Case No.: 1:21-cv-04653 |
| | ) | |
| v. | ) | Hon. Judge John J. Tharp, Jr. |
| | ) | Mag. Judge M. David Weisman |
| LARRY GAVIN, KAREN JONES-HAYES, DAMITA DELITZ, BRENDAN LOMBARDI, DIRECTOR MILLER, OFFICER SHELDON BUCHANAN, LT. FENDLEY DOUGE, & THOMAS DART, in his official capacity, | ) ) ) ) ) ) | |
| Defendants. | ) | |

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' 12(b)(6) MOTION TO DISMISS COUNTS I-V OF THIRD AMENDED COMPLAINT**

## INTRODUCTION

Defendants' Motion should be denied. It applies the incorrect legal standard to each of Plaintiff's claims, and largely consists of bald assertions with no elaboration or citation to authority.[1] To the extent the Motion raises any argument at all, it amounts to a claim that the facts will show that Defendants acted reasonably under the circumstances. But this is not an argument for dismissal at the pleadings stage. It is instead a question of fact to be resolved at trial or (if the facts are undisputed) on summary judgment. Drawing all inferences in Plaintiff's favor, the Third Amended Complaint easily states a claim on each of the challenged causes of action.

## BACKGROUND

Plaintiff Michael Mayo's Third Amended Complaint alleges several claims against officers who work at or have responsibility for the Cook County Department of Corrections (the "Jail"). Plaintiff is a 45-year-old disabled veteran who uses a cane to walk, relies on numerous prescription medications, and is vulnerable to abuse by other prisoners and correctional officers. TAC ¶ 1. Plaintiff is currently housed at the Jail. *Id.* This detention is not punishment following a conviction; instead, Plaintiff has been a pre-trial detainee at the Jail since November 2018, awaiting trial on his charges. *Id.*

Plaintiff was subjected to a series of unconstitutional actions during and after a riot at the Jail on April 29, 2020. As described in the Third Amended Complaint ("TAC"), Defendants created the circumstances for this riot by adopting a policy to house violent prisoners along with vulnerable detainees like Plaintiff, as well as a policy discouraging transfer of these prisoners out

---

[1] The Motion purports to move for dismissal on behalf of Karen Jones-Hayes. Mot. at 10 ("KAREN JONES-HAYES . . . , by and through [her] attorneys DeVore Radunsky LLC . . . ."). Nevertheless, during a subsequent meet-and-confer call regarding discovery, counsel at DeVore Radunsky LLC represented that they do not represent Ms. Jones-Hayes and declined to respond to discovery on her behalf on that basis. The Court should therefore deny any Motion as to Ms. Jones-Hayes.

of the unit even after they began committing violent acts. *Id.* During the evening of April 28 and the early hours of April 29, 2020, several inmates became intoxicated and "harassed the dormitory throughout the night, including by stealing personal possessions of other detainees." *Id.* ¶ 30. Despite the obvious danger posed by these marauding inmates, Defendants did not transfer them to a more secure tier, and took no steps to quell an obviously dangerous situation. *Id.* ¶ 31. Instead, pursuant to a policy discouraging transfer of inmates even if they were actively engaging in violence, Jail staff left the inmates to themselves. *Id.* ¶¶ 32-33. Encouraged by the lack of supervision, these inmates became increasingly unruly, until a riot broke out on the morning of April 29. *Id.* ¶¶ 34-38. Once the riot began, Defendants stood by for an hour as plaintiff and other vulnerable detainees endured the ensuing mayhem and physical abuse. *Id.* ¶¶ 39-41.

Following the riot, Defendants handcuffed Plaintiff and forced him to walk down stairs, despite a medical order prohibiting such handcuffing and Plaintiff's repeated pleas that he could not walk and needed to use the elevator. *Id.* ¶¶ 44-46. Defendants allowed other detainees to use the elevator, but not Plaintiff Mayo. *Id.* ¶¶ 47-48. This objectively unreasonable conduct had its predictable effect, and Plaintiff collapsed on the stairs. *Id.* ¶ 49. Rather than immediately treating Plaintiff, Defendants left Plaintiff on the stairwell floor in only his underwear for 15 minutes. *Id.* ¶ 50. When officers finally returned, they moved Plaintiff to a unit without proper medical facilities. *Id.* ¶¶ 51-54. Plaintiff was forced to remain there for another 12 hours, wearing only his underwear in a cold cell, while critical medications were withheld from him. *Id.* ¶¶ 53-55.

Eventually, in light of his injuries, Plaintiff was allowed to use a wheelchair. But even this accommodation was short-lived. *Id.* ¶ 60. Three weeks later, Defendant Lombardi confiscated the wheelchair, assaulting Plaintiff in the process. *Id.* ¶¶ 61-65. When Plaintiff filed a grievance, Sergeant Lombardi launched a campaign of retaliatory harassment against Plaintiff, including stealing and scattering Plaintiff's belongings, destroying Plaintiff's personal and legal documents,

issuing falsified citations, improperly confiscating prescribed medicines and personal property, improperly reading Plaintiff's mail (including legal correspondence), and informing other prisoners that Plaintiff was responsible for Sergeant Lombardi's ill treatment of them. *Id.* ¶¶ 71-113. This conduct has caused significant harm to Plaintiff, including physical and mental injuries for which Plaintiff has received medical treatment, including mental health treatment. *Id.* ¶ 114.

In their Motion, Defendants do not seek dismissal of any claims against Sergeant Lombardi (Counts VI and VII). Nor do Defendants claim that any Defendant is entitled to qualify immunity. Instead, Defendants attempt to challenge the factual sufficiency of Counts I through V by applying an incorrect legal standard. Because Plaintiff pleads more than sufficient, detailed facts to state a claim under the governing law, Defendants' motion should be denied.

## ARGUMENT

### I. COUNTS I - III: FAILURE TO PROTECT UNDER THE FOURTEENTH AMENDMENT

Defendants move to dismiss Count I, which is asserted against Defendants Jones-Hayes, Gavin, and Delitz based on their conduct before and during the riot, as well as Counts II and III, which are alleged in the alternative against Defendant Dart and Defendant Miller based on the policy decisions that led to the riot.[2] Defendants' arguments apply an entirely incorrect legal standard. The Motion should be denied for this reason alone. Moreover, when the correct standard is applied, it is plain that Plaintiff has adequately stated a claim.

---

[2] These counts are pled in the alternative because it is not yet clear whether Defendant Dart or Defendant Miller possessed final policymaking authority under which the challenged policies were promulgated. Defendants do not challenge this aspect of the claims in their Motion.

3

A. **Defendants' Arguments are Based on an Eighth Amendment Standard, but Plaintiff's Claims Arise under the Fourteenth Amendment**

In their Motion, Defendants claim that Plaintiff's Section 1983 claim fails because "a failure to provide protection constitutes a violation of the Eighth Amendment only if deliberate indifference by prison officials to a prisoner's welfare effectively condones the attack by allowing it to happen." Mot. at 2 (internal quotation marks omitted). Defendants then cite several cases applying this standard and argue at length that Plaintiff has not sufficiently alleged that Defendants showed deliberate indifference or a "malicious[] and sadistic[]" state of mind. *Id.* at 5.

This is the incorrect standard for Plaintiff's claims. As the TAC makes clear, Plaintiff's claims do not arise under the Eighth Amendment. Instead, because Plaintiff is a pre-trial detainee who has not been convicted, his claims arise under the Fourteenth Amendment. *See* TAC ¶ 120 ("The above conduct was objectively unreasonable under the Fourteenth Amendment's Due Process Clause."); *Kingsley v. Hendrickson*, 576 U.S. 389, 400 (2015) ("[P]retrial detainees (unlike convicted prisoners) cannot be punished at all, much less 'maliciously and sadistically.'").

Unlike a prisoner raising an Eighth Amendment claim, a pre-trial detainee's Fourteenth Amendment claim need only establish the conduct at issue was "objectively unreasonable." *Kingsley*, 576 U.S. at 396–9; *Hardeman v. Curran*, 933 F.3d 816, 823 (7th Cir. 2019) ("We . . . hold that *Kingsley*'s objective inquiry applies to all Fourteenth Amendment conditions-of-confinement claims brought by pretrial detainees," including claims regarding "the protection [a detainee] is afforded against other inmates."); *Kemp v. Fulton Cnty.*, 27 F.4th 491, 497 (7th Cir. 2022) ("[F]ollowing our own post-*Kingsley* line of cases, we now hold that *Kingsley* abrogates

4

*Guzman*, *Butera*, and their kin to the extent that they require pretrial detainees to show, in a failure-to-protect case, that a defendant was subjectively 'aware of a substantial risk of serious injury.'").[3]

Defendants' Motion does not even mention this applicable standard, let alone make any argument that Plaintiff's claim fails to meet it. For this reason alone, Defendants' Motion should be denied. *Miranda v. Cnty. of Lake*, 900 F.3d 335, 353 (7th Cir. 2018) (holding that defendants forfeited any argument based on standard articulated in case they failed to cite). The recent case of *Craft v. Burns*, 2022 WL 5169390, at *5 (S.D. Ill. Oct. 5, 2022), is instructive. In that case, as here, a pre-trial detainee asserted Fourteenth Amendment claims against jail officials. In that case, as here, one of the defendants argued for dismissal under the "'deliberate indifference' standard of the Eighth Amendment[.]" *Id.* The court noted that this was incorrect: "The standard for pretrial detainee claims requires an objective reasonableness analysis, rather than the subjective reasonableness analysis used for the Eighth Amendment claims." *Id.* The court therefore denied that defendant's motion to dismiss. The Court should do the same here.

    **B.**    **Plaintiff Adequately States a Claim for Failure to Protect Under the Fourteenth Amendment**

When the correct standard is applied, it is clear that Plaintiff has adequately stated a claim for violation of the Fourteenth Amendment.

        1.    <u>Defendants Dart and Miller's Policy Decisions Created a Clear Risk of Harm to Vulnerable Detainees like Plaintiff</u>

"[T]hose charged with the high responsibility of running prisons are required, as a matter of constitutionally imposed duty, to 'protect prisoners from violence at the hands of other prisoners.'" *Santiago v. Walls*, 599 F.3d 749, 758 (7th Cir. 2010) (quoting *Farmer v. Brennan*,

---

[3] *Sutton v. Cnty. of Cook*, 1998 WL 120348, at *2 (N.D. Ill. Mar. 13, 1998), which Defendants cite, is no longer good law in light of these more recent Seventh Circuit authorities.

511 U.S. 825, 833 (1994)). As discussed above, this duty is particularly exacting toward those like Plaintiff who have not been convicted of any crime. Despite this duty and Plaintiff's vulnerable medical state, Defendants dismantled the safeguards protecting vulnerable detainees like Plaintiff from violent inmates. As described in the TAC, jail staff "substantially reduced or eliminated measures previously in place in Division 8 to ensure safety of detainees and maintain order," including reducing supervision. TAC ¶ 23 ("[T]he officers don't even come on this deck where we at. We pretty much monitor and watching ourselves.").

At the same time, Defendants Dart and/or Miller enacted a policy that resulted in vulnerable detainees such as Plaintiff being housed alongside "multiple inmates whose violent or otherwise disruptive behavior at the Jail rendered them flatly ineligible to be housed in a dormitory-style tier." *Id.* ¶ 26. Indeed, as alleged in the TAC, Defendant Miller promulgated a policy discouraging transfer of inmates out of divisions like Division 8/3G, "even if [the] inmate was engaging in violence or other misconduct that poses a risk to other detainees." *Id.* ¶ 27.

This policy created a clear and unmistakable risk to vulnerable detainees like Plaintiff. In their Motion, Defendants do not contest that the riot posed a substantial danger to vulnerable detainees like Plaintiff or that Defendants' policies led to the riot. *Farmer*, 511 U.S. at 834. Instead, Defendants argue that the risk created by these policies was merely "a general danger," which is insufficient for an Eighth Amendment claim. Mot. at 6. Defendants cite *Round v. Brandell*, 2015 WL 4624809 (N.D. Ill. Aug. 3, 2015), to support this proposition.

Defendants are incorrect. First, as explained above, Plaintiff's claims arise under the Fourteenth Amendment, rather than the Eighth Amendment, and *Round* is thus inapplicable. Even still, Plaintiff has done far more than plead a "general risk[] of violence in prison." In *Round*, the plaintiff was injured after being placed in a housing unit with an inmate who had a "history of violent incidents." *Id.* at *3. But there were no additional factors that indicated a threat to the

plaintiff. Here, in contrast, Plaintiff has alleged a host of factors that created an unsafe environment for vulnerable detainees like Plaintiff. Defendants Dart and/or Miller issued policies that had the obvious effect of mixing the Jail's most dangerous inmates with the Jail's most vulnerable detainees in an open room with no safe retreat and in circumstances of high stress and minimal control, all while making it more difficult to remove inmates even after they became violent. Even after several inmates became unruly and dangerous in the late evening of April 28 and early hours of April 29, Defendants did nothing to remove those inmates from the open tier, virtually assuring further and greater violence. TAC ¶¶ 31-33. In these circumstances, it was easily predictable, if not inevitable, that violence would occur.[4] *Lucus v. Koenig*, 2020 WL 5210910, at *2 (N.D. Cal. Sept. 1, 2020) (holding that Plaintiff who alleged that he was improperly housed in the same unit with violent inmates and suffered injuries during a riot "has stated cognizable claims for failure to protect from other inmates"); *Robinson v. Prunty*, 249 F.3d 862, 866-67 (9th Cir. 2001) (holding that any reasonable person would be aware of significant risk of harm given frequency of violent outbreaks in racially segregated yard and defendants' failure to intervene after violence broke out).

Defendants claim, without any citation to authority, that Plaintiff is obligated to specify "what 'proper controls' should have existed" to prevent such violence. *Id.* There is no such requirement in the law. Nevertheless, the Fourteenth Amendment itself makes the answer clear: officers should have housed inmates with known violent histories separately from vulnerable inmates or, at a bare minimum, removed inmates when they became violent. Doing the opposite—forcing these groups together in a pressure cooker and discouraging intervention even after

---

[4] To the extent Defendants suggest that they needed to know of a danger that Plaintiff *himself* would be attacked, this is inconsistent with applicable law. As the Supreme Court has explained, it is enough, even under the more stringent Eighth Amendment standard, that a defendant have notice of a danger to a particular population, and "it would obviously be irrelevant to liability that the officials could not guess beforehand precisely who would attack whom." *Farmer v. Brennan*, 511 U.S. 825, 844 (1994).

7

violence broke out—was objectively unreasonable, and the TAC plausibly alleges that Defendants "acted purposefully, knowingly, or recklessly by promulgating [such] a policy." TAC ¶¶ 126, 135.

### 2. Defendants' Decisions During the Riot Exacerbated the Risk of Harm to Plaintiff and Other Vulnerable Detainees

After these policies created a serious risk of harm, Defendants then ignored clear warning signs as these risks were realized in actual violence. On the evening of April 28 and early hours of April 29, 2020, several detainees became intoxicated through ingestion of illegal substances and began harassing vulnerable detainees. *Id.* ¶ 30. Correctional officers did not take reasonable steps to quell the disturbance and were discouraged by policy from transferring these violent inmates from the unit. *Id.* ¶¶ 32-33. The next morning, officers then threw fuel on the fire by refusing to turn on the television or enable Division 8/3G's phone bank, which the inmates relied on to learn about the quickly progressing pandemic. *Id.* ¶ 34. Eventually, the obvious risk materialized, and "the intoxicated inmates began rioting." *Id.* ¶ 35.

Even then, Defendants refused to take reasonable steps to protect vulnerable detainees like Plaintiff. This riot continued for more than an hour, during which time "Defendants Gavin, Jones-Hayes, and/or Delitz directed Jail staff to avoid entering Division 8/3G to restore order" or protect vulnerable detainees. *Id.* ¶¶ 40-42. Instead, while "Mr. Mayo and other detainees pleaded for Jail staff to intervene and protect the non-rioting detainees, . . . at least forty Jail employees watched the mayhem from behind protective glass" and ignored detainees' pleas. *Id.* ¶¶ 39-40. As a result of Defendants' objectively unreasonable conduct, Plaintiff suffered injuries during the riot, including being "hit with multiple implements and sprayed with mace." *Id* ¶38.

Despite these facts, Defendants argue that Defendants Jones-Hayes, Gavin, and Delitz lacked "notice of a particularized danger of a riot." Mot. at 4. But Plaintiff challenges these Defendants' decisions both before and *during the riot*, after the danger had been realized and

8

violence was occurring against Plaintiff and others. Specifically, the TAC alleges that despite the active violence, "Defendants Gavin, Jones-Hayes, and/or Delitz directed Jail staff to *avoid* entering Division 8/3G to restore order." TAC ¶ 41 (emphasis added). Plaintiff plausibly alleges that these Defendants knew of the ongoing danger and "acted purposefully, knowingly, or recklessly by failing to remedy, and actively contributing to, the conditions giving rise to the April 29, 2020 riot, and by failing to timely quell the riot, thereby failing to protect Mr. Mayo from injuries sustained during and immediately after the riot." *Id.* ¶ 119.[5]

The facts of this case illustrate a basic principle of constitutional law: "having stripped" detainees like Plaintiff "of virtually every means of self-protection and foreclosed their access to outside aid, the government and its officials are not free to let the state of nature take its course." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). This is true even, and indeed especially, during a widespread threat such as the COVID-19 pandemic. Defendants claim that their decisions were necessary and justified by the circumstances, but this is a question of fact for resolution following full discovery. Plaintiff's allegations are more than sufficient to state a claim.

    **C.    Defendants' Arguments Regarding the Extent of Plaintiff's Physical Injury are Baseless**

Finally, Defendants argue that Plaintiff's failure to protect claim should be dismissed because, they assert, the injuries Plaintiff suffered were relatively minor. This argument is

---

[5] Defendants also cite *Santiago v. Walls*, 599 F.3d 749 (7th Cir. 2010), to argue that Defendants lacked the requisite state of mind. Setting aside the fact that *Santiago* applied the deliberate indifference standard under the Eighth Amendment, the case is also distinguishable on its facts. In *Santiago*, defendants saw plaintiff get in a fight and heard a nearby inmate threaten plaintiff while the fight was ongoing. *Id.* at 756. More than a year after the threat, the inmate who issued it did indeed attack the plaintiff, but only after plaintiff was returned to the general population after six months in segregation and placed in a cell with the aggressor (an unlikely and unforeseeable event). *Id.* The officers who heard the threat more than a year earlier could not be said to have shown deliberate indifference to the threat. Conversely, here, the TAC does not allege that Defendants knew of a threat that materialized more than a year later under unlikely circumstances. Rather, as to Count I, it alleges that Defendants ignored a rapidly deteriorating situation, watched the riot *while* it was unfolding, and directed Jail staff not to restore order, thereby failing to protect Plaintiff from imminent harm. As to Counts II and III, the TAC alleges that the conditions giving rise to the riot took shape in March or April of 2020—the same month in which the riot occurred.

unavailing. Even under the Eighth Amendment, a plaintiff's injuries "need not be significant" to support a claim for money damages. *Rahim v. Sheahan*, 2001 WL 1263493, at *9 (N.D. Ill. Oct. 19, 2001) (quoting *Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1997)). Indeed, even if there were no physical injury (and Plaintiff has adequately alleged that he suffered physical injury), this would not justify dismissal of the claim, but would instead merely limit recovery to nominal damages. *Magwood v. Sec'y, Fla. Dep't of Corr.*, 652 F. App'x 841, 845 (11th Cir. 2016) (holding that "nominal damages may be available" for a plaintiff who does "not show that he was injured" in a failure-to-protect claim); *Campbell v. Frank*, 2007 WL 2819286, at *4 (S.D. Ill. Sept. 26, 2007) (similar); *Calhoun v. DeTella*, 319 F.3d 936, 941 (7th Cir. 2003) ("[N]ominal damages are not compensation for loss or injury, but rather recognition of a violation of rights." (quotation omitted)); *Robinson v. Page*, 170 F.3d 747, 748 (7th Cir. 1999) ("It would be a serious mistake . . . to require a showing of physical injury in all prisoner civil rights suits.").

## II. COUNTS IV AND V: FAILURE TO ATTEND TO SERIOUS MEDICAL NEEDS

Defendants also move to dismiss Count IV, which is asserted against Defendants Buchanan and Douge based on their failure to attend to serious medical needs in connection with Plaintiff's fall on the stairs, and Count V, which is asserted against Defendants Gavin and Miller based on their failure to attend to serious medical needs in connection with their decision to place detainees with critical medical needs, such as Plaintiff, in a separate unit where they knew or should have known such care could not be provided. Again, Defendants' arguments are based on the incorrect standard and should therefore be rejected out of hand. Applying the correct standard, both Count IV and Count V adequately state claims.

### A. Defendants Again Apply the Incorrect Standard

As with their argument with respect to Counts I through III, Defendants' argument with respect to Counts IV and V applies "the incorrect standard for an inadequate medical care claim

10

brought by a pretrial detainee." *Craft*, 2022 WL 5169390, at *5. Here again, Defendants' Motion is based on an inapplicable Eighth Amendment standard and inapposite case law requiring that "the official knew that the risk of injury was substantial." Mot. at 8 (citing *Chapman v. Keltner*, 241 F.3d 842, 845 (7th Cir. 2001)). However, as the Seventh Circuit has made clear in more recent decisions, "medical-care claims brought by pretrial detainees under the Fourteenth Amendment are subject only to the objective unreasonableness inquiry identified in *Kingsley*" and do not require proof of subjective knowledge. *Miranda*, 900 F.3d at 352 ("[U]nder *Kingsley*, a detainee must 'prove more than negligence but less than subjective intent—something akin to reckless disregard.'") (quotation omitted). Defendants have thus forfeited any argument under the correct standard, and their motion should be dismissed for this reason alone. *See Craft*, 2022 WL 5169390, at *5 (denying motion to dismiss where defendants applied the Eighth Amendment's subjective standard rather than the Fourteenth Amendment's objective standard to claim for inadequate medical care brought by a pretrial detainee).

### B. Count IV of the Third Amended Complaint Adequately States a Claim Under the Fourteenth Amendment

Count IV is alleged against Defendants Buchanan and Douge, who forced Plaintiff to walk down stairs while handcuffed despite Plaintiff's medical need to use a cane without handcuffs and despite his pleas to be allowed to use the elevator like other detainees with mobility issues. TAC ¶¶ 46-48. As Plaintiff had warned, he was unable to navigate the stairs while handcuffed and eventually collapsed, lying in the stairwell for fifteen minutes without medical attention despite serious injuries to his back. *Id.* ¶¶ 49-50. Plaintiff sufficiently alleges a claim for inadequate medical care under the Fourteenth Amendment based on this conduct.

11

1. <u>Defendants Unreasonably Disregarded Plaintiff's Serious Medical Needs</u>

As Defendants acknowledge, a medical condition is objectively serious if it is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." Mot. at 8 (quoting *Zentmyer v. Kendall Cnty.*, 220 F.3d 805, 810 (7th Cir. 2000)); *but see Whitney v. Khan*, 2021 WL 105803, at *4–5 (N.D. Ill. Jan. 12, 2021) ("The Court is inclined to believe that the seriousness of the plaintiff's condition, rather than being a separate element of a plaintiff's Fourteenth Amendment claim, is better viewed as a component of the analysis of the objective reasonableness of the defendant's treatment of the plaintiff."). Plaintiff's need for assistance in walking met both prongs—it had been diagnosed and treated by a physician and would be obvious to any layperson, particularly when Plaintiff dispelled any doubt by specifically informing Defendants of the need.

Despite their knowledge of Plaintiff's medical need, Defendants Buchanan and Douge acted unreasonably by forcing Plaintiff to walk handcuffed down a flight of stairs. Any objective observer would have known—and indeed, Defendants did know—that this presented a high risk of harm. This decision was particularly unreasonable in light of the easily available alternative of not handcuffing Plaintiff and/or allowing him to take the elevator, as several other detainees with mobility issues were permitted to do. TAC ¶ 47.

This conduct led to Plaintiff collapsing on the stairs and suffering a serious back injury. In addition to being the obvious consequence of Defendants' reckless actions, this collapse presented a distinct serious medical condition. "[E]ven a layperson would easily recognize" that a disabled individual collapsing on stairs and suffering a serious back injury requires medical treatment. Mot. at 8 (quoting *Zentmyer*, 220 F.3d at 810). Nevertheless, Defendants Buchanan and Douge acted unreasonably by delaying any treatment of Plaintiff and instead leaving him handcuffed and in his underwear on the floor of the stairwell for 15 minutes.

Here again, Defendants' argument is essentially that Plaintiff's allegations are wrong and that their conduct was reasonable. But that factual dispute is for resolution by the jury with the benefit of full discovery. In deciding Defendants' motion to dismiss, the Court must "construe the complaint in the light most favorable to the plaintiff, accepting as true all well-pleaded facts alleged, and drawing all possible inferences in h[is] favor." *Jackson v. Blitt & Gaines, P.C.*, 833 F.3d 860, 862 (7th Cir. 2016). Under this standard, at an absolute minimum, "[i]t would be premature at the Motion to Dismiss stage to say that [Defendants'] care was or was not within reasonable standards . . . because it is obvious that there is disagreement about these issues." *Craft*, 2022 WL 5169390, at *5 (denying motion). The case law is clear that such fact-bound determinations are unfit for resolution as a matter of law, and are particularly unfit for resolution on a motion to dismiss.[6]

### 2. The Cases Defendants Cite Do Not Support Their Argument

Defendants cite *Pyles v. Fahim*, 771 F.3d 403, 410-11 (7th Cir. 2014); *Salley v Parker*, 2022 WL 2952818 (N.D. Ill., Jul. 26, 2022); and *Perkins v. Pfister*, 711 F. App'x 335, 337 (7th Cir. 2017), in support of their argument, but none of these authorities help their case. First, each case applied the Eighth Amendment standard rather than the applicable Fourteenth Amendment standard, and *Perkins* did not address a claim for inadequate medical care at all. *Pyles* and *Salley* were not decided on a

---

[6] *Anderson v. Morrison*, 835 F.3d 681 (7th Cir. 2016) (finding a sufficient Eighth Amendment claim where inmate was handcuffed behind his back and forced to walk, unaided, down stairs littered with spilled milk and trash); *Henard v. Green*, 10 F. App'x 357, 361 (7th Cir. 2001) (reversing grant of summary judgment to defendants because "[a] jury . . . reasonably could conclude that Green knew of a substantial risk that Henard could not make it down the stairs"); *Carbonell v. Goord*, 2000 WL 760751, at *8 (S.D.N.Y. June 13, 2000) (denying summary judgment because facts were "sufficient to give rise to the inference that [defendant] was aware that he was placing [plaintiff] in serious danger by making him walk down steep stairs while on crutches, but proceeded anyway."); *Bell v. Berg*, 2008 WL 686589, at *4 (E.D. Tex. Mar. 10, 2008) ("The Plaintiff told the Defendants that he could not go up and down the stairs. The Defendants could see that it was difficult for him to go up and down the stairs . . . . . . . The Court concludes that there are disputed issues of material fact as to whether the Defendants were deliberately indifferent to the Plaintiff's serious medical need by making him go up and down the stairs."); *Brashear v. Dailey*, No. 2:18-173-WOB (E.D. Ky. 2019) ("[T]he Court's review of the case law suggests that handcuffing an inmate behind his back and subsequently forcing him to walk down stairs without help might be a constitutional violation, but also might not. The difference turns on the factual context of each case, which is not yet established in the present record.").

motion to dismiss, but were instead decided at summary judgment based on a full consideration of the facts developed in discovery—including the precise condition of the stairs, the length of the stairs, the extent of the plaintiff's walking ability, the plaintiff's ability to support himself with his hands, and whether plaintiff told the officers of his inability to walk.[7] Thus, far from supporting Defendants' argument, these cases instead demonstrate why fact-intensive claims such as Plaintiff's cannot be resolved without full discovery and evidence of all relevant facts.

      C.      **Count V of the Third Amended Complaint Adequately States a Claim Under the Fourteenth Amendment**

Defendants' argument with respect to Count V is a series of bald assertions with no argument or legal support. "A litigant who fails to press a point by supporting it with pertinent authority, or by showing why it is sound despite a lack of supporting authority or in the face of contrary authority, forfeits the point." *Pelfresne v. Village of Williams Bay*, 917 F.2d 1017, 1023 (7th Cir. 1990); *see also, e.g.*, *Beamon v. Marshall & Ilsley Tr. Co.*, 411 F.3d 854, 862 (7th Cir. 2005). Defendants' unsupported assertions are insufficient to raise any issue for the court's consideration, and the Motion should be denied for this reason alone.

In any event, the factual allegations of Count V are more than sufficient to state a claim. As explained in the TAC, Plaintiff had been housed in Division 8/3G precisely because that division had the capacity to attend to his serious medical needs, including his need for regular medication. Nevertheless, "Defendants Gavin and Miller directed the ERT to transfer all Division 8/3G inmates to Division 10," a division without the capacity to address such needs. TAC ¶ 52;

---

[7] Indeed, the *Salley* court noted its decision was partly based on the fact that, although the plaintiff had a crutch, he had one hand "free to balance himself. He can, for instance, hold onto a railing for extra support. He isn't left helpless on the stairs or subjected to an uncompromising danger." 2022 WL 2952818, at *11. This is precisely what Plaintiff could *not* do in this case because he was handcuffed.

*id.* ¶ 54 ("Division 10 is not a medical division, and is thus not equipped to treat detainees with serious medical conditions like Mr. Mayo and all other Division 8/3G detainees.").

This decision—to transfer a group of detainees with critical medical needs to a facility unequipped to meet those needs—was an objectively unreasonable failure to attend to Plaintiff's serious medical needs. Even under an Eighth Amendment standard, "[c]ourts have frequently found that moving an inmate to a housing assignment inconsistent with his medical needs can form the basis of a deliberate indifference claim." *Quezada v. Akabike*, 2021 WL 4461129, at *5 (E.D. Cal. Sept. 29, 2021). Indeed, as described in the TAC, Jail staff recognized this at the time. When Division 8/3G's charge nurse discovered what had happened, the nurse "expressed alarm that detainees with serious medical conditions were being held in small cells in Division 10 where their care could not be adequately managed." TAC ¶ 56. Thus, Defendants' decisions "purposefully, knowingly, or recklessly" put Plaintiff in serious jeopardy, and this risk was realized when Plaintiff missed "several critical medications" for serious medical conditions including diabetes, high blood pressure, and kidney failure. *Id.* ¶ 55.

## CONCLUSION

Under the correct legal standard, Plaintiff has pleaded ample facts to state a claim in each count of his complaint. Defendants' Motion to Dismiss should be denied.

DATED: November 3, 2022               Respectfully submitted,

                                      /s/ David Zott
                                      David Zott, P.C.
                                      **KIRKLAND & ELLIS LLP**
                                      300 North LaSalle
                                      Chicago, IL 60654
                                      United States
                                      Telephone: +1 312 862 2000
                                      Facsimile: +1 312 862 2200
                                      Email: dzott@kirkland.com

                                      John P. Hannon (admitted *pro hac vice*)
                                      Jennifer M. Joslin (admitted *pro hac vice*)
                                      Stephen Tensmeyer (admitted *pro hac vice*)
                                      **KIRKLAND & ELLIS LLP**
                                      60 East South Temple
                                      Salt Lake City, UT 84111
                                      Telephone: (801) 877-8100
                                      Facsimile: (801) 877-8101
                                      Email: John.hannon@kirkland.com
                                      Email: Jennifer.Joslin@kirkland.com
                                      Email: Stephen.Tensmeyer@kirkland.com

                                      ***Attorneys for Plaintiff Michael C. Mayo***