## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| MICHAEL C. MAYO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. **1:21-cv-04653** |
| | ) | |
| LARRY GAVIN, KAREN JONES-HAYES, | ) | Hon. Judge Robert M. Dow, Jr. |
| DAMITA DELITZ, BRENDON | ) | Mag. Judge M. David Weisman |
| LOMBARDI, DIRECTOR MILLER, | ) | |
| OFFICER BUCHANAN, THOMAS DART, | ) | |
| AND LIEUTENANT DOUGE, | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANT KAREN JONES-HAYES' ANSWER
## AND AFFIRMATIVE DEFENSES TO
## PLAINTIFF'S THIRD AMENDED COMPLAINT

NOW COMES Defendant, Karen Jones-Hayes, by her attorney, Kimberly M. Foxx, State's Attorney of Cook County, through her Assistant State's Attorney, Mia Buntic, and for Defendant Jones-Hayes' Answer and Affirmative Defenses to Plaintiff, Michael C. Mayo's Third Amended Complaint, states as follows:

## PRELIMINARY STATEMENT

1.      This case centers on Defendants' actions during and after an April 29, 2020 riot in Division 8/3G where Mr. Mayo, a detainee awaiting trial in the Cook County Department of Corrections (the "Cook County Jail" or the "Jail"), is housed.  Defendants intentionally ignored the dangerous conditions giving rise to the riot, and failed to protect Mr. Mayo from rioting inmates, who threw objects at him and sprayed him with mace; failed to treat Mr. Mayo for injuries sustained during the riot; handcuffed him despite a medical order that prohibits handcuffing Mr. Mayo, who is a disabled veteran and uses a cane to walk; ignored Mr. Mayo's pleas to be transported by elevator and instead forced him to walk down several flights of stairs;

left Mr. Mayo unattended for 15 minutes after he collapsed in the stairwell, sustaining significant injuries, as a result of having been forced to walk down several flights of stairs; left Mr. Mayo, who was wearing only his underwear, in a cold cell for over 12 hours, and failed to administer any of his critical medications during this period.

**ANSWER: Defendant Karen Jones-Hayes lacks knowledge and has insufficient information to admit or deny the allegations as set forth in Paragraph 1 and therefore denies the same.**

2.      After Mr. Mayo's collapse, and given his immobility and injuries, he was provided a wheelchair to facilitate his transfer to another division while the Jail's Emergency Response Team (ERT) regained order in Division 8/3G.  Three weeks later, on May 21, 2020, Sergeant Lombardi—purporting to act at the direction of Jail medical staff—confiscated the wheelchair because Mr. Mayo did not have a formal prescription to possess it.  In the course of confiscating the wheelchair, Sergeant Lombardi assaulted Mr. Mayo, resulting in significant injuries from which Mr. Mayo continues to suffer.  In an attempt to cover-up the assault, Sergeant Lombardi issued a citation to Mr. Mayo that contained falsehoods.

**ANSWER: Defendant Karen Jones-Hayes lacks knowledge and has insufficient information to admit or deny the allegations as set forth in Paragraph 2 and therefore denies the same.**

3.      Mr. Mayo subsequently grieved the assault, after which Sergeant Lombardi—motivated by Mr. Mayo's protected activity—embarked on a persistent and egregious pattern of retaliatory harassment against Mr. Mayo.

**ANSWER: Defendant Karen Jones-Hayes admits that Plaintiff filed a grievance but denies all other allegations as set forth in Paragraph 3.**

<u>**JURISDICTION AND VENUE**</u>

4.      This action is brought pursuant to 42 U.S.C. § 1983 for violations of Mr. Mayo's constitutional rights under the Fourteenth Amendment and constitutional Amendments

2

incorporated therein as against the states. This Court has jurisdiction over all claims pursuant to 28 U.S.C. §§ 1331 and 1343(a). Venue is proper is this judicial district pursuant to 28 U.S.C. § 1391(b) because the events giving rise to Mr. Mayo's claims occurred in Cook County, Illinois.

**ANSWER: Defendant Jones-Hayes admits that jurisdiction and venue are proper, but denies that the events as alleged occurred.**

<u>**PARTIES**</u>

5.     Plaintiff Michael C. Mayo is, and was at all relevant times herein, a pretrial detainee at the Cook County Jail.

**ANSWER: Defendant Jones-Hayes lacks knowledge and has insufficient information to admit or deny the allegations in Paragraph 5 and therefore denies the same.**

6.     Mr. Gavin was at all relevant times an Assistant Executive Director at the Cook County Jail, and is sued in his individual capacity.

**ANSWER: Defendant Jones-Hayes lacks knowledge and has insufficient information to admit or deny the allegations set forth in Paragraph 6 and therefore denies the same.**

7.     Ms. Jones-Hayes was at all relevant times a Superintendent at the Cook County Jail, and is sued in her individual capacity.

**ANSWER: Defendant Jones-Hayes admits that she was a Superintendent at the Cook County Jail and that she is sued in her individual capacity. Defendant Jones-Hayes lacks knowledge and has insufficient information to admit or deny the remaining allegations set forth in Paragraph 7 and therefore denies the same.**

8.     Ms. Delitz was, at various points relevant to this complaint, a Sergeant and a Lieutenant at the Cook County Jail, and is sued in her individual capacity.

**ANSWER: Defendant Jones-Hayes lacks knowledge and has insufficient information to admit or deny the allegations set forth in Paragraph 8 and therefore denies the same.**

9.      Mr. Lombardi was at all relevant times a Sergeant at the Cook County Jail, and is sued in his individual capacity.

**ANSWER: Defendant Jones-Hayes lacks knowledge and has insufficient information to admit or deny the allegations set forth in Paragraph 9 and therefore denies the same.**

10.      Mr. Miller was at all relevant times an Executive Director at the Cook County Jail, and is sued in his individual capacity.

**ANSWER: Defendant Jones-Hayes lacks knowledge and has insufficient information to admit or deny the allegations set forth in Paragraph 10 and therefore denies the same.**

11.      Officer Buchanan and Lieutenant Douge are employees of the Cook County Jail who served, either in a full- or part-time capacity, on the Jail's ERT during the events alleged herein, and are sued in their individual capacities.

**ANSWER: Defendant Jones-Hayes lacks knowledge and has insufficient information to admit or deny the allegations set forth in Paragraph 11 and therefore denies the same.**

12.      Thomas Dart is the Cook County Sheriff, and is sued in his official capacity.

**ANSWER: Defendant Jones-Hayes admits that Thomas Dart is the Cook County Sheriff, but lacks knowledge and has insufficient information to admit or deny the remaining allegations set forth in Paragraph 12 and therefore denies the same.**

13.      All defendants acted within the scope of their employment at the Cook County Jail during the events described in this complaint, and therefore acted under color of law of the State of Illinois.

**ANSWER: Defendant Jones-Hayes admits that she acted within the scope of her**

employment at the Cook County Jail, but lacks knowledge and has insufficient information to admit or deny the remaining allegations set forth in Paragraph 13 and therefore denies the same.

## STATEMENT OF FACTS

**The Jail Staff Reduces Controls Designed to Maintain Order, and Fosters an Antagonistic Climate Requiring Frequent Use of the ERT**

14.     Throughout March and April of 2020, during the height of uncertainty related to the Covid-19 pandemic, conflicts between Jail inmates and Jail staff substantially proliferated due to the Jail's failure to implement basic health precautions recommended by state and federal health officials.  While inmates intently watched cable news programming announcing the latest recommendations and describing the unfolding global pandemic, Jail staff, upon information and belief, did not communicate with inmates regarding the Jail's plans (if any) to protect inmates from Covid-19.

**ANSWER: Defendant Jones-Hayes denies the allegations set forth in Paragraph 14.**

15.     In a futile attempt to mollify growing unrest amongst Jail inmates, Jail staff began loosening restrictions on television and phone access, among other measures not intended to address the Covid-19 pandemic in the Cook County Jail.

**ANSWER: Defendant Jones-Hayes lacks knowledge and has insufficient information to admit or deny the allegations set forth in Paragraph 15 and therefore denies the same.**

16.     At the same time, Jail staff reduced or eliminated measures designed to ensure order in the Jail, and reduced other services leading to unsanitary conditions.  For example, upon information and belief, correctional officers substantially reduced or altogether ceased periodic walk-throughs of various divisions, and failed to collect refuse which led to overflowing garbage bins.  *See https://southsideweekly.com/not-getting-no-treatment-cook-county-jail-covid/*

(recounting interviews of Division 8 detainees conducted on April 6 and 7, 2020).

**ANSWER: Defendant Jones-Hayes denies the allegations set forth in Paragraph 16.**

17.　Relying on Jail policies issued in response to the Covid-19 pandemic, correctional officers who had previously ensured order amongst inmates by standing guard inside the tier to which they were assigned began routinely opting—pursuant to a permissive, but not mandatory, policy—to stand guard outside of such tiers.

**ANSWER: Defendant Jones-Hayes denies the allegations set forth in Paragraph 17.**

18.　Amidst this environment, in March and April of 2020, Jail staff increasingly lost control of various subdivisions of the Jail, in turn leading to a marked increase in the deployment of the Jail's ERT to restore order.

**ANSWER: Defendant Jones-Hayes denies that jail staff increasingly lost control of various subdivisions of the Jail, and has insufficient information and lacks knowledge to admit or deny the remaining allegations of Paragraph 18 and therefore denies the same.**

**Division 8/3G Was Especially Vulnerable to Riotous Outbreaks Caused by the Jail's Reduction in Controls Designed to Maintain Order and Consequent Reliance on the ERT**

19.　Division 8/3G, where Mr. Mayo is housed—and was at all times relevant to this complaint—is part of a Residential Treatment Unit (RTU) designed for the provision of medical care to detainees with injuries and other serious medical conditions that could not be adequately treated in other divisions.

**ANSWER: Defendant Jones-Hayes has insufficient information and lacks knowledge to admit or deny the allegations in Paragraph 19, and therefore denies the same.**

20.　Because of their medical conditions, detainees in Division 8/3G were especially vulnerable to serious disease or death from exposure to SARS-CoV-2.　Detainees in Division 8/3G, by virtue of their medical conditions, were also especially vulnerable to physical mistreatment, and faced heightened risk from prison fights and riots, or the use of force by

correctional personnel.

**ANSWER: Defendant Jones-Hayes has insufficient information and lacks knowledge to admit or deny the allegations as set forth in Paragraph 20 and therefore denies the same.**

21.     Upon information and belief, in March and April 2020, multiple detainees in Division 8 died from, or became seriously ill with, Covid-19.

**ANSWER: Defendant Jones-Hayes has insufficient information and lacks knowledge to admit or deny the allegations as set forth in Paragraph 21 and therefore denies the same.**

22.     Upon information and belief, in March and April of 2020, Jail staff reduced or eliminated healthcare measures previously in place to care for detainees housed in Division 8. *See https://southsideweekly.com/not-getting-no-treatment-cook-county-jail-covid/* (Division 8 detainee undergoing chemotherapy relaying: "I don't have any medicine[,] I'm not seeing the doctors[,] [t]he nurse is not coming").

**ANSWER: Defendant Jones-Hayes has insufficient information and lacks knowledge to admit or deny the allegations as set forth in Paragraph 22 and therefore denies the same.**

23.     Upon information and belief, in March and April of 2020, Jail staff substantially reduced or eliminated measures previously in place in Division 8 to ensure safety of detainees and maintain order of the Division. *See id.* ("You know, the officers don't even come on this deck where we at. We pretty much monitor and watching ourselves. The officers go around with gloves and masks. We have nothing.").

**ANSWER: Defendant Jones-Hayes denies the allegations as set forth in Paragraph 23.**

24.     Division 8/3G is a dormitory-style unit—the 39 detainees housed therein do not have dedicated cells, and instead reside on bunk beds in a single room.  Division 8/3G detainees thus cannot retreat to a cell in order to protect themselves from aggressive or violent conduct by other detainees.

**ANSWER: Defendant Jones-Hayes has insufficient information and lacks knowledge to admit or deny the allegations as set forth in Paragraph 24 and therefore denies the same.**

25.     At some point in March or April of 2020, Division 8/3G was transformed into a "covid-designated" division.  As a result of such designation, inmates from other divisions who had tested positive for Covid-19 or had been exposed to an inmate who had tested positive for Covid-19 were transferred from their assigned divisions to Division 8/3G while their illnesses subsided or their period of "quarantine" ran its course.

**ANSWER: Defendant Jones-Hayes has insufficient information and lacks knowledge to admit or deny the allegations as set forth in Paragraph 25 and therefore denies the same.**

26.     By virtue of Division 8/3G's designation as a "covid-designated" division, multiple inmates whose violent or otherwise disruptive behavior at the Jail rendered them flatly ineligible to be housed in a dormitory-style tier (and instead required them to be housed in cells) were being housed in Division 8/3G alongside inmates (including Mr. Mayo) whose substantial medical needs, and non-violent and compliant behavior at the Jail, entitled them to be housed in Division 8/3G.

**ANSWER: Defendant Jones-Hayes has insufficient information and lacks knowledge to admit or deny the allegations as set forth in Paragraph 26 and therefore denies the same.**

27.     At some point in March or April of 2020, Defendant Miller promulgated a policy under which no inmate in a "covid-designated" division could be transferred out of such division without the approval of an executive director, even if an inmate was engaging in violence or other misconduct that poses a risk to other detainees.

**ANSWER: Defendant Jones-Hayes has insufficient information and lacks knowledge to admit or deny the allegations as set forth in Paragraph 27 and therefore denies the same.**

28.     Upon information and belief, Defendant Dart either directed Defendant Miller to

adopt such policy, or Defendant Miller adopted the policy pursuant to final policymaking authority that had been delegated to him by Defendant Dart.

**ANSWER: Defendant Jones-Hayes has insufficient information and lacks knowledge to admit or deny the allegations as set forth in Paragraph 28 and therefore denies the same.**

29.    In the alternative, and upon information and belief, Defendant Dart ratified Defendant Miller's issuance of such policy on or before April 28, 2020.

**ANSWER: Defendant Jones-Hayes has insufficient information and lacks knowledge to admit or deny the allegations as set forth in Paragraph 29 and therefore denies the same.**

**Jail Staff Ignores Deteriorating Conditions in Division 8/3G and Fails to Protect Mr. Mayo from Rioting Detainees**

30.    On the evening of April 28, 2020, a Division 8/3G detainee created a liquid intoxicant (referred to by detainees and Jail staff as "hooch") from prescription medications. Several detainees ingested the hooch, became intoxicated, and harassed the dormitory throughout the night, including by stealing personal possessions of other detainees.

**ANSWER: Defendant Jones-Hayes has insufficient information and lacks knowledge to admit or deny the allegations as set forth in Paragraph 30 and therefore denies the same.**

31.    Division 8/3G correctional officers were aware of this activity, but took no measures to restore order in the Division aside from confiscating some, but not all, of the hooch.

**ANSWER: Defendant Jones-Hayes has insufficient information and lacks knowledge to admit or deny the allegations as set forth in Paragraph 31 and therefore denies the same.**

32.    Jail staff assigned to Division 8/3G during the 11:00pm to 7:00am shift (from April 28, 2020 to April 29, 2020) would have transferred the detainees engaging in misconduct to another division better-equipped to constrain their disruptive behavior, but the policy

promulgated by Defendant Miller required executive director approval before doing so. Jail staff did not rouse any executive director to secure the required approval, so the problematic detainees remained in Division 8/3G.

**ANSWER: Defendant Jones-Hayes has insufficient information and lacks knowledge to admit or deny the allegations as set forth in Paragraph 32 and therefore denies the same.**

33.     Many or all of the detainees participating in the above conduct were in Division 8/3G due to covid protocols, and absent such protocols, these detainees would never have been housed in a dormitory-style division due to their violent nature and behavior at the Jail, and would instead have been in a division with cells.

**ANSWER: Defendant Jones-Hayes has insufficient information and lacks knowledge to admit or deny the allegations as set forth in Paragraph 33 and therefore denies the same.**

34.     At or around 7:30 am the following morning (April 29, 2020), the intoxicated and disorderly detainees asked Jail staff to turn on the television and enable the Division's telephone bank. Jail staff denied the request, and, upon information and belief, the telephones and televisions were never activated.

**ANSWER: Defendant Jones-Hayes has insufficient information and lacks knowledge to admit or deny the allegations as set forth in Paragraph 34 and therefore denies the same.**

35.     Because Defendants withdrew the primary means by which Jail staff were ensuring safety and order in Division 8/3G (television and phones), the intoxicated inmates began rioting.

**ANSWER: Defendant Jones-Hayes has insufficient information and lacks knowledge to admit or deny the allegations as set forth in Paragraph 35 and therefore denies the same.**

36.     Multiple fist fights ensued, and detainees acquired various objects, including correctional staff phones/computers and mop buckets, and began using them as weapons. One

10

detainee acquired a can of mace and sprayed it throughout the Division.

**ANSWER: Defendant Jones-Hayes has insufficient information and lacks knowledge to admit or deny the allegations as set forth in Paragraph 36 and therefore denies the same.**

37.    Mr. Mayo did not participate in any of this conduct, and attempted to stay out of the fray by remaining on his bed.

**ANSWER: Defendant Jones-Hayes has insufficient information and lacks knowledge to admit or deny the allegations as set forth in Paragraph 37 and therefore denies the same.**

38.    Because of the dormitory-style layout of Division 8/3G, Mr. Mayo was unable to protect himself and was hit with multiple implements and sprayed with mace, sustaining injuries as a result.

**ANSWER: Defendant Jones-Hayes has insufficient information and lacks knowledge to admit or deny the allegations as set forth in Paragraph 38 and therefore denies the same.**

39.    Mr. Mayo and other detainees pleaded for Jail staff to intervene and protect the non-rioting detainees, which pleas were ignored.

**ANSWER: Defendant Jones-Hayes has insufficient information and lacks knowledge to admit or deny the allegations as set forth in Paragraph 39 and therefore denies the same.**

40.    The riot continued for more than an hour while at least forty Jail employees watched the mayhem from behind protective glass.

**ANSWER: Defendant Jones-Hayes has insufficient information and lacks knowledge to admit or deny the allegations as set forth in Paragraph 40 and therefore denies the same.**

41.    Defendants Gavin, Jones-Hayes, and/or Delitz directed Jail staff to avoid entering Division 8/3G to restore order.

**ANSWER: Defendant Jones-Hayes has insufficient information and lacks knowledge to admit or deny the allegations as set forth in Paragraph 41 and therefore denies the same.**

42. After more than an hour of rioting, upon information and belief, the ERT entered the Division at the direction of Defendant Gavin, who told the ERT that all detainees in Division 8/3G had become hostile.

**ANSWER: Defendant Jones-Hayes has insufficient information and lacks knowledge to admit or deny the allegations as set forth in Paragraph 42 and therefore denies the same.**

43. The ERT, armed with weapons and accompanied by dogs, entered the Division and forcibly restrained all detainees, whether or not they participated in the riot.

**ANSWER: Defendant Jones-Hayes has insufficient information and lacks knowledge to admit or deny the allegations as set forth in Paragraph 43and therefore denies the same.**

**The ERT Ignores Mr. Mayo's Medical Needs Resulting in Serious Injuries to Mr. Mayo**

44. Mr. Mayo was forcibly removed from his bed, clothed only in his underwear, and taken into the custody of Officer Buchanan and/or Lieutenant Douge.

**ANSWER: Defendant Jones-Hayes has insufficient information and lacks knowledge to admit or deny the allegations as set forth in Paragraph 44 and therefore denies the same.**

45. When Officer Buchanan and/or Lieutenant Douge began escorting Mr. Mayo out of the division, Mr. Mayo—a disabled veteran who is prescribed a cane that prohibits him from being cuffed while walking—informed them that he could not walk with his cane while cuffed. Officer Buchanan and/or Lieutenant Douge ignored Mr. Mayo, and forced him to walk while cuffed.

**ANSWER: Defendant Jones-Hayes has insufficient information and lacks knowledge to**

**admit or deny the allegations as set forth in Paragraph 45 and therefore denies the same.**

46.     When Mr. Mayo and Officer Buchanan and/or Lieutenant Douge approached a flight of stairs, Mr. Mayo requested that he be transported by elevator because his medical condition made it impossible to navigate stairs with a cane, especially while cuffed.

**ANSWER: Defendant Jones-Hayes has insufficient information and lacks knowledge to admit or deny the allegations as set forth in Paragraph 46 and therefore denies the same.**

47.     During this same period, members of the ERT transported numerous other detainees who had mobility issues by elevator.

**ANSWER: Defendant Jones-Hayes has insufficient information and lacks knowledge to admit or deny the allegations as set forth in Paragraph 47 and therefore denies the same.**

48.     Officer Buchanan and/or Lieutenant Douge ignored Mr. Mayo's plea and forced him to walk down several flights of stairs.

**ANSWER: Defendant Jones-Hayes has insufficient information and lacks knowledge to admit or deny the allegations as set forth in Paragraph 48 and therefore denies the same.**

49.     While walking down the stairs, Mr. Mayo collapsed, sustaining serious back injuries.

**ANSWER: Defendant Jones-Hayes has insufficient information and lacks knowledge to admit or deny the allegations as set forth in Paragraph 49 and therefore denies the same.**

50.     After his collapse, Mr. Mayo was left cuffed on the floor of the stairwell, in his

underwear, for fifteen minutes.

**ANSWER: Defendant Jones-Hayes has insufficient information and lacks knowledge to admit or deny the allegations as set forth in Paragraph 50 and therefore denies the same.**

51.     Mr. Mayo was then carried up a flight of stairs, placed in a wheelchair, and transported to Division 10.

**ANSWER: Defendant Jones-Hayes has insufficient information and lacks knowledge to admit or deny the allegations as set forth in Paragraph 51 and therefore denies the same.**

52.     Defendants Gavin and Miller directed the ERT to transfer all Division 8/3G inmates to Division 10.

**ANSWER: Defendant Jones-Hayes has insufficient information and lacks knowledge to admit or deny the allegations as set forth in Paragraph 52 and therefore denies the same.**

**Jail Staff Ignores Mr. Mayo's Serious Medical Needs in Division 10**

53.     Mr. Mayo was detained in a small cell in Division 10, still clothed only in his underwear, for 12 hours.

**ANSWER: Defendant Jones-Hayes has insufficient information and lacks knowledge to admit or deny the allegations as set forth in Paragraph 53 and therefore denies the same.**

54.     Division 10 is not a medical division, and is thus not equipped to treat detainees with serious medical conditions like Mr. Mayo and all other Division 8/3G detainees.

**ANSWER: Defendant Jones-Hayes has insufficient information and lacks knowledge to admit or deny the allegations as set forth in Paragraph 54 and therefore denies the same.**

14

55.     During this time, Mr. Mayo was not provided several critical medications he should have been administered, including: Iron supplements (to treat Mr. Mayo's anemia), Glipizide (to treat Mr. Mayo's diabetes), Clonidine (to treat Mr. Mayo's high blood pressure), Hydralazine (to treat Mr. Mayo's high blood pressure), Sevelamer (to treat Mr. Mayo's kidney failure), and Lasix (to treat Mr. Mayo's kidney failure).

**ANSWER: Defendant Jones-Hayes has insufficient information and lacks knowledge to admit or deny the allegations as set forth in Paragraph 55 and therefore denies the same.**

56.     In the afternoon, Division 8/3G's charge nurse (Nurse Anderson) arrived at the Jail and expressed alarm that detainees with serious medical conditions were being held in small cells in Division 10 where their care could not be adequately managed.

**ANSWER: Defendant Jones-Hayes has insufficient information and lacks knowledge to admit or deny the allegations as set forth in Paragraph 56 and therefore denies the same.**

57.     On April 30, 2020, Mr. Mayo filed a grievance relating to (1) the Jail's failure to protect him from rioting inmates, (2) the ERT's failure to attend to his medical needs as a disabled person who is prescribed a cane, leading to his collapse in the stairwell, and (3) the Jail's failure to provide him with his critical medications while he was detained in Division 10.

**ANSWER: Defendant Jones-Hayes has insufficient information and lacks knowledge to admit or deny the allegations as set forth in Paragraph 57 and therefore denies the same.**

58.     Jail staff denied Mr. Mayo's grievance, and on May 12, 2020, Mr. Mayo requested an appeal pursuant to administrative procedures made available by the Jail.

**ANSWER: Defendant Jones-Hayes has insufficient information and lacks knowledge to**

admit or deny the allegations as set forth in Paragraph 58 and therefore denies the same.

59.     On May 14, 2020, Jail staff denied Mr. Mayo's request, stating that the Jail's "original response stands."

**ANSWER: Defendant Jones-Hayes has insufficient information and lacks knowledge to admit or deny the allegations as set forth in Paragraph 59 and therefore denies the same.**

**Defendant Lombardi Assaults Mr. Mayo**

60.     Because of injuries sustained when he collapsed in the stairwell, Mr. Mayo was given a wheelchair by medical staff.

**ANSWER: Defendant Jones-Hayes has insufficient information and lacks knowledge to admit or deny the allegations as set forth in Paragraph 60 and therefore denies the same.**

61.     On May 21, 2020, roughly three weeks following the riot, Defendant Lombardi, purporting to act at the direction of Dr. Haman, arrived at Mr. Mayo's living space to confiscate the wheelchair he had possessed since the riot.

**ANSWER: Defendant Jones-Hayes has  insufficient information and lacks knowledge to admit or deny the allegations as set forth in Paragraph 61 and therefore denies the same.**

62.     Mr. Mayo explained he required the wheelchair due to the injuries he suffered when he collapsed in the stairwell.

**ANSWER: Defendant Jones-Hayes has insufficient information and lacks knowledge to admit or deny the allegations as set forth in Paragraph 62 and therefore denies the same.**

16

63.     Defendant Lombardi then transported Mr. Mayo in the wheelchair to the 3 West bullpen.

**ANSWER: Defendant Jones-Hayes has insufficient information and lacks knowledge to admit or deny the allegations as set forth in Paragraph 63 and therefore denies the same.**

64.     In the 3 West bullpen, Sergeant Lombardi forcibly removed Mr. Mayo from the wheelchair, violently pulling Mr. Mayo out of the chair by his arm.

**ANSWER: Defendant Jones-Hayes has insufficient information and lacks knowledge to admit or deny the allegations as set forth in Paragraph 64 and therefore denies the same.**

65.     Sergeant Lombardi then assaulted Mr. Mayo by slamming his head on the concrete floor in the course of piling his body onto Mr. Mayo's back, neck, and head, causing Mr. Mayo to briefly lose consciousness, and, upon information and belief, suffer a concussion.

**ANSWER: Defendant Jones-Hayes has insufficient information and lacks knowledge to admit or deny the allegations as set forth in Paragraph 65 and therefore denies the same.**

66.     Mr. Mayo suffered substantial pain during and after this event, and continues to experience symptoms related to his head injury, including: dizziness, headaches, impaired memory/recall, and blurred vision.

**ANSWER: Defendant Jones-Hayes has insufficient information and lacks knowledge to admit or deny the allegations as set forth in Paragraph 66 and therefore denies the same.**

67.     Defendant Lombardi then restrained Mr. Mayo against the wall in the bullpen.

**ANSWER: Defendant Jones-Hayes has insufficient information and lacks knowledge to admit or deny the allegations as set forth in Paragraph 67 and therefore denies the same.**

68.     Mr. Mayo was restrained in the bullpen for roughly an hour until Sergeant Lupino arrived and directed that Mr. Mayo be uncuffed.

**ANSWER: Defendant Jones-Hayes has insufficient information and lacks knowledge to**

admit or deny the allegations as set forth in Paragraph 68 and therefore denies the same.

69.     Sergeant Lupino knew Mr. Mayo to be a rule-abiding, peaceful detainee, and inquired about the circumstances leading to Mr. Mayo being restrained.

**ANSWER: Defendant Jones-Hayes has insufficient information and lacks knowledge to admit or deny the allegations as set forth in Paragraph 69 and therefore denies the same.**

70.     Mr. Mayo recounted the assault, and Sergeant Lupino asked Mr. Mayo whether he would provide a video narrative regarding the events.  Mr. Mayo provided such narrative.

**ANSWER: Defendant Jones-Hayes has insufficient information and lacks knowledge to admit or deny the allegations as set forth in Paragraph 70 and therefore denies the same.**

**Sergeant Lombardi Attempts to Intimidate Mr. Mayo and Cover-up the Assault**

71.     While Mr. Mayo was restrained in the 3 West bullpen, Sergeant Lombardi returned to Mr. Mayo's living space and, in full view of other detainees, proceeded to steal, scatter, and destroy Mr. Mayo's belongings.

**ANSWER: Defendant Jones-Hayes has insufficient information and lacks knowledge to admit or deny the allegations as set forth in Paragraph 71 and therefore denies the same.**

72.     Specifically, Sergeant Lombardi stole items Mr. Mayo had purchased from the Jail's commissary, ripped up Mr. Mayo's personal and legal documents, and threw books and other personal belongings of Mr. Mayo's onto the floor.

**ANSWER: Defendant Jones-Hayes has insufficient information and lacks knowledge to admit or deny the allegations as set forth in Paragraph 72 and therefore denies the same.**

73.     Later that same day, Mr. Mayo asked Sergeant Lombardi why he had engaged in this conduct.  Sergeant Lombardi smiled and told Mr. Mayo "I was looking for your cane."

**ANSWER: Defendant Jones-Hayes has insufficient information and lacks knowledge to admit or deny the allegations as set forth in Paragraph 73 and therefore denies the same.**

74.     Upon information and belief, Sergeant Lombardi performed these actions in an attempt to intimidate Mr. Mayo and prevent him from pursuing discipline against Sergeant Lombardi for the assault.

**ANSWER: Defendant Jones-Hayes has insufficient information and lacks knowledge to admit or deny the allegations as set forth in Paragraph 74 and therefore denies the same.**

75.     Sergeant Lombardi subsequently issued Mr. Mayo a citation containing four charges emanating from the assault: Possession of Level 2 Contraband, False Reporting or False Statement, Disobeying or Resisting Orders, and Disorderly Conduct.

**ANSWER: Defendant Jones-Hayes has insufficient information and lacks knowledge to admit or deny the allegations as set forth in Paragraph 75 and therefore denies the same.**

76.     Sergeant Lombardi's supporting factual narrative contained patent falsehoods regarding Mr. Mayo's verbal and non-verbal responses to Sergeant Lombardi's attempt to confiscate the wheelchair given to Mr. Mayo by Jail medical staff.

**ANSWER: Defendant Jones-Hayes has insufficient information and lacks knowledge to admit or deny the allegations as set forth in Paragraph 76 and therefore denies the same.**

77.     Upon information and belief, Sergeant Lombardi issued the false citation to Mr. Mayo to cover-up the assault.

**ANSWER: Defendant Jones-Hayes has insufficient information and lacks knowledge to admit or deny the allegations as set forth in Paragraph 77 and therefore denies the same.**

78.     When inmates in Division 8/3G receive citations, they are provided a "hearing" during which they enter a plea.  In practice and custom, citation hearings are held at the entrance to the detainee's tier.

**ANSWER: Defendant Jones-Hayes has insufficient information and lacks knowledge to admit or deny the allegations as set forth in Paragraph 78 and therefore denies the same.**

79.     When the Jail held a hearing for the citation issued to Mr. Mayo by Sergeant Lombardi, it departed from this practice and held his hearing at an unknown location outside of Mr. Mayo's tier.

**ANSWER: Defendant Jones-Hayes has insufficient information and lacks knowledge to admit or deny the allegations as set forth in Paragraph 79 and therefore denies the same.**

80.     Because of significant pain from injuries sustained during the April 29, 2020 riot and the May 21, 2020 assault, Mr. Mayo was unable to leave his living space to attend the hearing, and was thus found guilty of all charges in the citation for failure to attend the hearing.

**ANSWER: Defendant Jones-Hayes has insufficient information and lacks knowledge to admit or deny the allegations as set forth in Paragraph 80 and therefore denies the same.**

81.     Upon information and belief, Sergeant Lombardi caused this deviation in citation hearing practice because he knew Mr. Mayo's injuries would preclude him from traveling to the hearing location and providing his version of the events, thereby furthering Sergeant Lombardi's attempt to cover-up his assault of Mr. Mayo.

**ANSWER: Defendant Jones-Hayes has insufficient information and lacks knowledge to admit or deny the allegations as set forth in Paragraph 81 and therefore denies the same.**

**Sergeant Lombardi Embarks on a Persistent Campaign of Retaliation Motivated by Mr. Mayo's Resort to Grievance and Professional Misconduct Proceedings**

82.     On May 21, 2020, the same day of the assault, Mr. Mayo filed two grievances: one medical-related grievance and one regarding Sergeant Lombardi's assault.

**ANSWER: Defendant Jones-Hayes has insufficient information and lacks knowledge to admit or deny the allegations as set forth in Paragraph 82 and therefore denies the same.**

83.     Mr. Mayo placed both grievances in a locked box designated for detainee grievances, and he observed a correctional officer collect the grievances and hand them to Ms. Scales, a social worker employed by the Jail who was tasked with resolving grievances.

**ANSWER: Defendant Jones-Hayes has insufficient information and lacks knowledge to admit or deny the allegations as set forth in Paragraph 83 and therefore denies the same.**

84.     On or about June 6, 2020, Ms. Scales provided Mr. Mayo with the inmate carbon copy of his medical-related grievance.

**ANSWER: Defendant Jones-Hayes has insufficient information and lacks knowledge to admit or deny the allegations as set forth in Paragraph 84 and therefore denies the same.**

85.     When Ms. Scales provided the inmate copy to Mr. Mayo, he asked Ms. Scales about the status of the assault grievance.  Ms. Scales responded that she was "still working on it."

**ANSWER: Defendant Jones-Hayes has insufficient information and lacks knowledge to admit or deny the allegations as set forth in Paragraph 85 and therefore denies the same.**

86.     Almost a month later, on July 4, 2020, having never received the inmate carbon copy of his grievance related to Sergeant Lombardi's assault, Mr. Mayo filed another grievance reiterating the substance of the original grievance he filed on May 21, 2020.

**ANSWER: Defendant Jones-Hayes has insufficient information and lacks knowledge to admit or deny the allegations as set forth in Paragraph 86 and therefore denies the same.**

87.     Mr. Mayo's second grievance was denied because it was filed more than 15 days after the assault.

**ANSWER: Defendant Jones-Hayes has insufficient information and lacks knowledge to admit or deny the allegations as set forth in Paragraph 87 and therefore denies the same.**

88.     Because the Jail's employees, either intentionally or negligently, lost Mr. Mayo's grievance and then denied his replacement grievance as untimely, on July 30, 2020, Mr. Mayo filed a complaint regarding his assault at the hands of Sergeant Lombardi with the Cook County Office of Professional Review (OPR).

**ANSWER: Defendant Jones-Hayes has insufficient information and lacks knowledge to**

admit or deny the allegations as set forth in Paragraph 88 and therefore denies the same.

89.     On October 15, 2020, the OPR sent correspondence to Mr. Mayo relaying that it had "completed its review" of Mr. Mayo's complaint, but that "[d]ue to the confidentiality issues," it was "not at liberty to provide the findings of any investigation."

**ANSWER: Defendant Jones-Hayes has insufficient information and lacks knowledge to admit or deny the allegations as set forth in Paragraph 89 and therefore denies the same.**

90.     Upon information and belief, Sergeant Lombardi was aware of Mr. Mayo's grievance and OPR complaint related to the assault, and would have been interviewed in connection with the OPR investigation.

**ANSWER: Defendant Jones-Hayes has insufficient information and lacks knowledge to admit or deny the allegations as set forth in Paragraph 90 and therefore denies the same.**

91.     On September 22 and 24, 2020—after Mr. Mayo filed two grievances and one OPR complaint regarding Sergeant Lombardi's assault but before the OPR concluded its investigation—Sergeant Lombardi conducted "shakedowns" (searches for contraband) in Division 8/3G.

**ANSWER: Defendant Jones-Hayes has insufficient information and lacks knowledge to admit or deny the allegations as set forth in Paragraph 91 and therefore denies the same.**

92.     During these shakedowns, Sergeant Lombardi specifically targeted Mr. Mayo and searched his living space.

**ANSWER: Defendant Jones-Hayes has insufficient information and lacks knowledge to admit or deny the allegations as set forth in Paragraph 92 and therefore denies the same.**

93.     In the months preceding these shakedowns and continuing to present day, shakedowns were exceedingly rare in Division 8/3G, occurring roughly monthly and typically only in response to a discernable issue (e.g., a fight in the Division).

**ANSWER: Defendant Jones-Hayes has insufficient information and lacks knowledge to admit or deny the allegations as set forth in Paragraph 93 and therefore denies the same.**

94. On January 29, 2021, Sergeant Lombardi again singled Mr. Mayo out during a shakedown, and confiscated lidocaine patches for which Mr. Mayo had a prescription (to treat pain from injuries sustained when he collapsed on the stairs during the April 29, 2020 riot, as well as pain from injuries sustained at the hands of Sergeant Lombardi).

**ANSWER: Defendant Jones-Hayes has insufficient information and lacks knowledge to admit or deny the allegations as set forth in Paragraph 94 and therefore denies the same.**

95. After confiscating the lidocaine patches that Mr. Mayo possessed pursuant to prescription, Sergeant Lombardi issued a citation to Mr. Mayo containing two charges for the lidocaine patches: Misuse of Medication and Possession of Level 2 Contraband.

**ANSWER: Defendant Jones-Hayes has insufficient information and lacks knowledge to admit or deny the allegations as set forth in Paragraph 95 and therefore denies the same.**

96. Aside from two citations issued by Sergeant Lombardi (one related to the assault and one for the lidocaine patches), Mr. Mayo has never received a citation in his more than three years of detention at the Jail.

**ANSWER: Defendant Jones-Hayes has insufficient information and lacks knowledge to admit or deny the allegations as set forth in Paragraph 96 and therefore denies the same.**

97. In April 2021, Sergeant Lombardi entered Division 8/3G in response to an inmate altercation not involving Mr. Mayo, who was laying on his bed. When Sergeant Lombardi entered the deck he pointed at Mr. Mayo and said "you probably started the fight."

**ANSWER: Defendant Jones-Hayes has insufficient information and lacks knowledge to admit or deny the allegations as set forth in Paragraph 97 and therefore denies the same.**

98. On May 5, 2021, Sergeant Lombardi delivered mail to Divison 8/3G. Mr. Mayo

received legal mail that day, and the Jail's practice is to permit detainees to open their own legal

mail while the Sergeant looks on to ensure it does not contain contraband. Deviating from this

practice, Sergeant Lombardi opened Mr. Mayo's legal mail, looked inside, and said "no drugs

this time."

**ANSWER: Defendant Jones-Hayes has insufficient information and lacks knowledge to**

**admit or deny the allegations as set forth in Paragraph 98 and therefore denies the same.**

99.　　On May 7, 2021, Jail staff issued new property bags to all 39 detainees in

Division 8/3G.

**ANSWER: Defendant Jones-Hayes has insufficient information and lacks knowledge to**

**admit or deny the allegations as set forth in Paragraph 99 and therefore denies the same.**

100.　　On May 8, 2021, Sergeant Lombardi entered Division 8/3G, walked past multiple

living spaces with the new property bags in plain view, and proceeded to search under Mr.

Mayo's bed, where he found Mr. Mayo's newly-issued property bag. Sergeant Lombardi then

confiscated the newly-issued property bag.

**ANSWER: Defendant Jones-Hayes has insufficient information and lacks knowledge to**

**admit or deny the allegations as set forth in Paragraph 100 and therefore denies the**

**same.**

101.　　Mr. Mayo then asked Sergeant Lombardi why he was continuing to single him out

for harassment. Sergeant Lombardi replied "because I can."

**ANSWER: Defendant Jones-Hayes has insufficient information and lacks knowledge to**

**admit or deny the allegations as set forth in Paragraph 101 and therefore denies the**

**same.**

102.　　After this exchange, Sergeant Lombardi confiscated the newly-issued property

bags from two other inmates, informing them that they "can thank Mayo" for the confiscation of

their property bags.

**ANSWER: Defendant Jones-Hayes has insufficient information and lacks knowledge to admit or deny the allegations as set forth in Paragraph 102 and therefore denies the same.**

103. Sergeant Lombardi did not confiscate the newly-issued property bags of the remaining 36 detainees in Division 8/3G.

**ANSWER: Defendant Jones-Hayes has insufficient information and lacks knowledge to admit or deny the allegations as set forth in Paragraph 103 and therefore denies the same.**

104. Upon information and belief, Sergeant Lombardi confiscated the property bags of the other two detainees in a transparent effort to obscure his retaliation against Mr. Mayo after Mr. Mayo publicly accused Sergeant Lombardi of singling him out for harassment.

**ANSWER: Defendant Jones-Hayes has insufficient information and lacks knowledge to admit or deny the allegations as set forth in Paragraph 104 and therefore denies the same.**

105. On February 23, 2022—less than two weeks after Mr. Mayo filed an Amended Complaint asserting claims against Sergeant Lombardi—Mr. Mayo was told by a correctional officer that he had received legal mail, and that he could retrieve it in the hallway outside of the tier.

**ANSWER: Defendant Jones-Hayes has insufficient information and lacks knowledge to admit or deny the allegations as set forth in Paragraph 105 and therefore denies the same.**

106. The Jail's practice is to deliver legal mail to inmates inside the tier.

**ANSWER: Defendant Jones-Hayes the allegations as set forth in Paragraph 106.**

107.    Mr. Mayo exited the tier to see Sergeant Lombardi holding his legal mail at the end of the hallway.

**ANSWER: Defendant Jones-Hayes has insufficient information and lacks knowledge to admit or deny the allegations as set forth in Paragraph 107 and therefore denies the same.**

108.    There was no other Jail personnel present in the hallway.

**ANSWER: Defendant Jones-Hayes has insufficient information and lacks knowledge to admit or deny the allegations as set forth in Paragraph 108 and therefore denies the same.**

109.    Once Mr. Mayo traveled down the hallway, Sergeant Lombardi opened the mail, flipped through the contents, and then handed Mr. Mayo the mail.

**ANSWER: Defendant Jones-Hayes has insufficient information and lacks knowledge to admit or deny the allegations as set forth in Paragraph 109 and therefore denies the same.**

110.    Mr. Mayo's legal mail was prominently labeled as such, and the first page of the mail was a cover letter from Mr. Mayo's counsel in this action bearing prominent designations of privilege and confidentiality.  The remainder of the mail consisted of as-filed versions of Mr. Mayo's Amended Complaints, which center largely around Mr. Lombardi's conduct.

**ANSWER: Defendant Jones-Hayes has insufficient information and lacks knowledge to admit or deny the allegations as set forth in Paragraph 110 and therefore denies the same.**

111.    Mr. Mayo and Sergeant Lombardi did not exchange conversation, but Sergeant Lombardi's demeanor was intentionally intimidating.

**ANSWER: Defendant Jones-Hayes has insufficient information and lacks knowledge to**

admit or deny the allegations as set forth in Paragraph 111 and therefore denies the same.

112.    Sergeant Lombardi then followed Mr. Mayo back inside the tier where Sergeant Lombardi delivered legal mail to another inmate, consistent with the Jail's ordinary practice.

**ANSWER: Defendant Jones-Hayes has insufficient information and lacks knowledge to admit or deny the allegations as set forth in Paragraph 112 and therefore denies the same.**

113.    As a result of Sergeant Lombardi's persistent, retaliatory harassment of Mr. Mayo, other detainees in Division 8/3G have taken collective efforts to protect Mr. Mayo from Sergeant Lombardi when he enters the Division.

**ANSWER: Defendant Jones-Hayes has insufficient information and lacks knowledge to admit or deny the allegations as set forth in Paragraph 113 and therefore denies the same.**

114.    Sergeant Lomardi's persistent, retaliatory harassment of Mr. Mayo has caused Mr. Mayo to experience symptoms associated with post-traumatic stress disorder (PTSD), and he has received mental health treatment for the same.

**ANSWER: Defendant Jones-Hayes has insufficient information and lacks knowledge to admit or deny the allegations as set forth in Paragraph 114 and therefore denies the same.**

### COUNT I
**Section 1983 Claim Against Defendants Jones-Hayes, Gavin, and Delitz for Failure to Protect**

115.    Mr. Mayo repeats and re-alleges the preceding paragraphs as if fully set forth in this Count.

**ANSWER: Defendant Jones-Hayes adopts and incorporates her answers to paragraphs**

27

**1 through 114 as her answer to paragraph 115.**

116.　　In April of 2020, Mr. Mayo was incarcerated under conditions posing a substantial risk of harm.

**ANSWER: Defendant Jones-Hayes has insufficient information and lacks knowledge to admit or deny the allegations as set forth in Paragraph 116 of Count I and therefore denies the same.**

117.　　This substantial risk of harm from rioting detainees existed before the April 29, 2020 riot, and was caused by the Jail's failure to maintain proper controls to ensure prison safety, and the creation and maintenance of hostile relations with inmates due to the Jail's laissez faire approach to the Covid-19 pandemic. In addition, the Defendants named in this Count knew that Mr. Mayo, as an inmate housed in Division 8/3G, was particularly vulnerable to violence and physical mistreatment, and faced a substantial risk of serious harm from physical mistreatment not shared by the general prison population.

**ANSWER: Defendant Jones-Hayes denies the allegations as set forth in Paragraph 116 of Count I.**

118.　　The substantial risk of harm was further caused by the presence of detainees being housed in Division 8/3G whose violent or otherwise disruptive behavior at the Jail rendered them flatly ineligible to reside, for any period of time, in a dormitory-style division.

**ANSWER: Defendant Jones-Hayes denies the allegations as set forth in Paragraph 118 of Count I.**

119.　　The Defendants named in this Count acted purposefully, knowingly, or recklessly by failing to remedy, and actively contributing to, the conditions giving rise to the April 29, 2020 riot, and by failing to timely quell the riot, thereby failing to protect Mr. Mayo from injuries sustained during and immediately after the riot.

**ANSWER: Defendant Jones-Hayes denies the allegations as set forth in Paragraph 119 of Count I.**

120. The above conduct was objectively unreasonable under the Fourteenth Amendment's Due Process Clause.

**ANSWER: Defendant Jones-Hayes denies the allegations as set forth in Paragraph 120 of Count I.**

121. As a result of Defendants' unconstitutional conduct, Mr. Mayo suffered physical, mental, and emotional injuries.

**ANSWER: Defendant Jones-Hayes denies the allegations as set forth in Paragraph 121 of Count I.**

## COUNT II
**Section 1983 Claim Against Defendant Dart, in his official capacity, for Failure to Protect**

**Defendant Jones-Hayes makes no answer to Count II as it is not directed to this defendant.**

## COUNT III
**Section 1983 Claim Against Defendant Miller for Failure to Protect, in the Alternative to Count II**

**Defendant Jones-Hayes makes no answer to Count III as it is not directed to this defendant.**

## COUNT IV
**Section 1983 Claim Against Defendants Buchanan and Lieutenant Douge for Failure to Attend to Mr. Mayo's Serious Medical Needs**

**Defendant Jones-Hayes makes no answer to Count IV as it is not directed to this defendant.**

## COUNT V
**Section 1983 Claim Against Defendants Gavin and Miller for Failure to Attend to Mr. Mayo's Serious Medical Needs**
**Defendant Jones-Hayes makes no answer to Count V as it is not directed to this**

defendant.

## COUNT VI
**Section 1983 Claim Against Defendant Lombardi for Excessive Force**

Defendant Jones-Hayes makes no answer to Count VI as it is not directed to this

defendant.


## COUNT VII
**Section 1983 Claim Against Defendant Lombardi for First Amendment Retaliation**

Defendant Jones-Hayes makes no answer to Count VII as it is not directed to this

defendant.

## AFFIRMATIVE DEFENSES

NOW COMES Defendant KAREN JONES-HAYES, by and through Assistant State's Attorney

Mia Buntic, and setting forth the following affirmative defenses:

1. Defendant's conduct was at all times objectively reasonable and did not violate any of Plaintiff's

clearly established Constitutional Rights. Accordingly, Defendant is entitled to the defense of

qualified immunity.


2. To the extent Plaintiff is making any claims under Illinois law, Defendant is immune from

Plaintiff's claims under 745 ILCS 10/2-204 of the Illinois Tort Immunity Act which provides as

follows: "Except as otherwise provided by statute, a public employee, as such and acting within the

scope of his employment, is not liable for any injury caused by the act or omission of another

person."


3. To the extent it is revealed that Plaintiff failed to take reasonable measures to mitigate his alleged

injuries and damages, those facts shall be presented to preclude recovery for Plaintiff.

4. Plaintiff did not properly exhaust his administrative remedies as required by law.

5. Defendants reserve their rights to assert other affirmative defenses as they become known through further discovery or otherwise in this action.

WHEREFORE, Defendant, KAREN JONES-HAYES, respectfully requests that this Court enter judgment in her favor and against Plaintiff, MICHAEL MAYO, along with any further relief as this Court deems just and proper.

## JURY DEMAND

Defendant Jones-Hayes demands a jury trial on all issues so triable.

Dated:  March 10, 2023

Respectfully submitted,

*/s/ Mia Buntic*
Mia Buntic
Assistant State's Attorney
Conflicts Counsel Unit
Cook County State's Attorney's Office
50 W. Washington, Suite 2769
Chicago, IL 60602
P:312.603.1434
E:mia.buntic@cookcountyil.gov

**CERTIFICATE OF SERVICE**

The undersigned certifies that on March 10, 2023, she electronically filed the foregoing document with the Clerk of the Court for Northern District of Illinois, using the CM/ECF system of the Court.

*/s/ Mia Buntic*